AT

## DUBUQUE, OCTOBER TERM, A. D. 1883.

IN THE THIRTY-SEVENTH YEAR OF THE STATE.

---

PRESENT:

HON. JAMES G. DAY. CHIEF JUSTICE.
" JAMES H. ROTHROCK,
" JOSEPH M. BECK,           } JUDGES.
" AUSTIN ADAMS,
" WILLIAM H. SEEVERS,

---

WINKLEMANS v. THE DES MOINES NORTHWESTERN R'Y CO.

1. **Continuance:** FACTS WARRANTING DENIAL OF. A motion for the continuance of this cause was properly overruled, because it appears from the facts of the case (see opinion) that the moving party, notwithstanding the grounds of its motion, had ample time to produce its witnesses, and was not prejudiced by the ruling of the court.

2. **Railroads:** RIGHT OF WAY: DAMAGES. Where a railway company, in laying its road across a farm, destroys a valuable spring, that fact should be considered in estimating the damages, and evidence as to the character of the spring, and of its destruction, is admissible.

3. ——: ——: ——: EVIDENCE. A witness who is called to testify as to the damages to a farm arising from the taking of a portion of it for railway purposes, may testify as to what other lands sold for in the same neighborhood, for the purpose of showing his knowledge of the value of land in that vicinity; and, for the same purpose, he may state what he has heard others say concerning sales of land made by them.

4. Practice: CROSS-EXAMINATION. Where defendant's counsel were absent during the examination in chief of plaintiff on his own behalf, it was not competent to require him, by general questions on cross-examination, to make a recital of what he had testified in chief.

5. Railroads: RIGHT OF WAY: DAMAGES: WHOLE FARM TO BE CONSIDERED. On a question of damages caused to a body of land used, improved and occupied as one farm, by the construction of a railroad across the same, the whole farm must be considered, and testimony offered as to the damage to separate portions of the farm was properly excluded.

6. ——: ——: ——: EVIDENCE. On the trial of such question, it was not competent to ask the commissioners, who had assessed the damages in the first instance, whether their assessment correctly expressed their judgment; but they might be asked for their judgment at the time of the trial on appeal.

7. ——: ——: ——: ——. Where a spring was destroyed by a right of way taken for a railway, it was not error, in a trial of the question of damages to the land, to allow one of the company's witnesses, who had testified to the damage, to be asked on cross-examination how much damage the destruction of a spring of a certain capacity would be to the land.

8. ——: ——: ——: PRACTICE: SPECIAL INTERROGATORIES. In submitting to a jury a cause involving the damages caused by taking the right of way through a farm for a railroad, the court properly refused to submit special interrogatories, asking the opinion of the jury as to the damages to separate parts of the farm, and other interrogatories which related to questions not involved in the case.

9. ——: ——: EXTENT OF RIGHT: STATUTE CONSTRUED. The restriction as to what is "necessary," in section 1241 of the Code, applies to the quantity of land to be taken for right of way, and not to the quantity of earth, gravel, stone, timber, etc., which may be removed from the land condemned. But the railroad company may not wantonly destroy timber, or use earth, etc., for other purposes than those provided in the statute.

*Appeal from Carroll Circuit Court.*

WEDNESDAY, OCTOBER 17.

THIS is a proceeding for the condemnation of a right of

way for the defendant's railroad through the farm of the plaintiff. The sheriff's jury appraised the plaintiff's damages at $500. The plaintiff appealed, and a trial by jury was had in the circuit court, and the damages were assessed at $2,100. The defendant appeals.

*Parsons & Runnels*, for appellant.

*McDuffie & Howard* and *H. Potter*, for appellee.

ROTHROCK, J.—I. The farm of the plaintiff is situated in Greene county. The appeal from the assessment of the

1. CONTINU-
ANCE : facts
warranting
denial of.

sheriff's jury was taken to the October term, 1881, of the circuit court for that county. The parties appeared at that term and, upon the application of the defendant, the place of trial was changed to the circuit court of Carroll county. At the January term, 1882, the cause was continued upon the application of the defendant. At the September term, 1882, and on the twenty-sixth day of that month, the cause was reached for trial in the regular course of the business of the term. The plaintiff appeared with his counsel, and, no one appearing for the defendant, a jury was impaneled to try the cause, and the plaintiff was examined as a witness, and the court adjourned until 9 o'clock, September 27, at which time the defendant's counsel appeared and filed a motion asking that the trial be set for some future day in the term, not earlier than Friday of that week. In an affidavit filed with the motion, it was stated that it would be possible for the defendant, with great effort, to prepare for trial, if two days were allowed him therefor. The motion was overruled, and on that day the trial of the cause proceeded until the evidence of the plaintiff was introduced, and, by agreement of parties, further proceedings were postponed until the morning of September 28. The trial was not resumed until the twenty-ninth of September. On that day a portion of the defendant's evidence was introduced, and on the thirtieth of September the taking of the evidence was concluded.

Counsel for defendant claim that the court erred in overruling the motion to set the cause down for trial at some future day of the term. The affidavit made by counsel in excuse for failure to appear when the cause was reached for trial is quite voluminous. It recites the fact that one member of the partnership of counsel for defendant was then, and had been, very dangerously sick. It also sets forth pressing business engagements of the other partner, his necessary attendance upon other courts, and his sickness, besides other grounds of excuse. We have not thought it necessary to set out this affidavit in full. We think that, in view of the time afterwards taken in the trial of the cause, and the postponement of it for one day without anything being done, the court did not err in overruling the motion. The motion was made and overruled on the twenty-seventh of September, and the cause was open for the examination of witnesses and the submission of evidence up to and including the thirtieth day of the same month. This delay gave ample time for defendant to produce its witnesses.

II. The farm of the plaintiff consists of 222 acres. The right of way upon which defendant's road was constructed

2. RAILROADS: right of way: damages. passes through the farm in such a manner that two hundred acres are on one side of the railroad, and about twenty-two acres on the other side. The farm buildings are on the twenty-two acres, and the tillable land is mostly, if not all, on the two hundred acres. The plaintiff claimed upon the trial that he had a valuable spring upon the land appropriated for the right of way, which, in building the railroad, was entirely destroyed by placing an embankment several feet in height over the spring. He produced witnesses, who testified to the character of the spring, and to the fact that it was destroyed by the railroad embankment.

It is claimed that this was improper evidence, because the plaintiff could not enhance his damages by showing that the railroad was negligently or improperly constructed; and the

destruction of the spring could not be shown as a separate item of damages.

We think the evidence was competent, and deem it sufficient to say that the plaintiff did not by the evidence seek to show that the road was improperly constructed. No witness was asked whether the embankment which destroyed the spring was necessary to the proper construction of the road. It will be presumed that it was necessary. And the plaintiff did not seek by the evidence to show the destruction of the spring as a separate item of damages.

III. Objection was made to certain questions propounded by the plaintiff to a witness named Jay, who was introduced

3. ——: ——: for the purpose of showing the damages to the ——: evidence. farm. The witness stated that he resided for two years upon what was known as the Parks farm, within half a mile of the farm in question. He was asked by plaintiff's counsel if the Parks farm had been sold. He answered that it had been sold; and in answer to a further question he stated that it had been sold for $35 per acre. It was objected that it was incompetent for the witness to give evidence of particular sales. We have no means of knowing the connection in which these questions were asked. If they were for the purpose of showing the witness' knowledge of the value of land in the neighborhood, they were competent.

IV. Another witness was interrogated as to the sale of the Parks farm, and answered that he knew of the sale by

THE SAME. what Parks told him. The defendant moved to strike out this evidence because it was not responsive to the question, and because it was mere hearsay as to a single transaction, and the witness was not, therefore, competent to testify as to value.

These objections, we think, were properly overruled. The knowledge which qualifies a witness to testify as to values must necessarily consist largely of hearsay. The examination of market reports, and information acquired from others

as to sales of property, qualify a witness to testify as to values. It appears in the examination of some of the witnesses that they did not consider the Parks farm as valuable as plaintiff's farm, and the abstract shows that the first mention of the Parks farm was made by a witness on his cross-examination by defendant's counsel. And this is not at all surprising. The usual rule in such cases is to call a witness and ask him generally if he has a knowledge of the value of the property in question, or property of that kind. If he answers that he has, he is allowed to state the value in his judgment, and on cross-examination his means of knowledge or qualification to testify upon the subject is particularly inquired into, if counsel desires to make such inquiry. If he shows upon the cross-examination that his knowledge of values is limited, his testimony is not for that reason to be stricken out, but it goes to the jury for what it is worth. These remarks apply to the testimony of the witnesses Head and Millett, as well as to the last above objection. We discover no error in any of these rulings. There was a sufficient showing that the witnesses had the requisite qualifications to testify as to value.

V.   As has already been stated, the plaintiff was examined as a witness in his own behalf in the absence of defendant's

4. PRACTICE: counsel. The record shows that he had testified
cross-examin-
ation.      that his farm was worth $50 an acre before defendant's right of way was taken from it, and that after the road was located across it the farm was not worth more than half that amount. He also testified to the destruction of the spring, much the same as the other witnesses did who testified after the arrival of defendant's counsel.

When the plaintiff rested his case, the defendant called the plaintiff as a witness, and, after examining him with great particularity as to the location of the farm and the manner in which it was affected by the railroad having been constructed through it, he was asked whether he stated in his examination in the absence of defendant's counsel anything about the amount of damages, and, if so, what he said. The

question was varied and put in many different forms, in all of which the defendant sought to have the plaintiff repeat the testimony which he had given to the jury. The plaintiff's counsel objected to this line of examination, and the objections were sustained. After examining the witness at great length, some question was made as to whether the examination was an examination in chief, or a cross-examination. The court stated that the rulings had been made upon the ground that the defendant had called the witness as its own. Counsel then asked that he be permitted to cross-examine the witness, and he was permitted to do so. After this, counsel was permitted to ask the witness in cross-examination as to particular statements which had been made by him in his examination in chief, but the court refused to allow the witness to be asked generally what he had stated when a witness in the examination in chief. For instance, he was allowed to be asked if, in his examination in chief, he was interrogated as to the value of the farm and the amount of damages, and what the witness took into consideration in estimating the damages. Answers were made to all questions of this character, but defendant was not permitted to require witness to make a recital of what he had testified to, by asking general questions. This examination of the plaintiff as a witness, both before leave was given to cross-examine him and afterwards, covered every conceivable question in the case. The examination of the witness by defendant's counsel covers some fifty-three pages of the abstract. It is claimed that the court erred in its rulings pending this examination. We are very clearly of the opinion that no error occurred in confining the examination to an inquiry as to particular questions arising in the case. As to the other objections, we need not examine them in detail. We think counsel was allowed the utmost latitude in the examination.

Our attention is called by counsel to rulings of the court on pages 55 and 56 of the abstract. The counsel there asked the witness to put a value upon certain parts of his

farm, and it was objected to as incompetent, and the ob-
jection sustained.    These rulings were clearly
correct.    The land was used, improved and oc-
cupied as one farm, and could not be properly
valued in detached parcels.

VI.    The defendant called the jurors or commissioners
who had assessed the damages in the first instance, and in-
sisted that they should state whether their report
and assessment made to the sheriff correctly ex-
pressed their judgment as to the amount of damages sus-
tained by the plaintiff.    This line of examination was not
allowed, and defendant was required to take the judgment of
the witnesses at the time of the trial.    This was strictly cor-
rect, and the point demands no further attention.    Defendant
was not allowed to show that the plaintiff made no mention
to the sheriff's jury of the spring on his farm.    This was cor-
rect, because it is not shown that he made any claim what-
ever to them.    It does not even appear that plaintiff then
knew that the construction of the road would require an
embankment that would affect his spring.    Objection is
made because the plaintiff was allowed to ask a witness upon
cross-examination how much damage the destruc-
tion of a spring capable of furnishing water for
two hundred hogs in the dryest season would be to the farm.
This was not objectionable upon cross-examination.    It was
a test of what the witness took into consideration in estimat-
ing damages.    It is not objectionable because the question is
hypothetical.    There was evidence in the case showing that
the spring had the capacity stated above.    There were other
objections upon rulings in the admission and exclusion of
evidence which we must pass over without particular notice.
None of them appear to be well taken.

VII.    The defendant asked that a number of special in-
terrogations be submitted to the jury.    The request was
refused, and this action of the court is complained
of.    These questions were not proper to be sub-
mitted to the jury.    They asked the jury to find

*Margin notes:*
5. RAILROADS: right of way: damages: whole farm to be considered.

6. —:—:—: dence.: evidence.

7. —:—:—:—:—.

8. —:—:—: practice: special interrogatories.

the value of parts of the farm considered alone and apart from the other parts. This was not practicable under the proof. Other questions called upon the jury to say how much if any damages they estimated for filling up the spring, and whether, if the railroad had been properly located and constructed, the spring would have been filled up or destroyed. We have seen that there was no question in the case as to whether the construction was proper or improper. It is to be presumed that the road was properly constructed; and the court instructed the jury that they must not allow anything for the loss of a spring as a spring, and separate and distinct from the farm, but that if in appropriating the right of way and building the road any spring was destroyed, that was a proper subject to be considered.

VIII. The most of the charge given by the court to the jury was excepted to, and the defendant asked certain 9. ——: ——: instructions which were refused, and exceptions extent of right: statute construed. were taken. Among other instructions, the court gave the following:

"6. The land which the defendant has taken for its right of way is a strip of ground one hundred feet in width, and lying fifty feet on either side of the center line of the track of defendant's railroad, as the same is laid upon the surface of the ground. The right which the defendant acquires to this strip of ground is a right to fence it off from the adjoining lands on either side, and construct and operate its railroad thereon.

"7. It may also take, remove and use for the construction and repair of said railway and its appurtenances, any earth, stone, gravel, timber, or other materials, on or from the land so taken. The right is a perpetual one at the option of the defendant; that is, it will continue so long as the defendant, or any person or corporation claiming under it, sees fit to and does use said land for railway purposes.

"8. If, at any time, the railway built upon this right of way should cease to be used or operated for a period of eight

consecutive years, the land embraced in said right of way, and the title thereto, would revert to the person who then owned the adjoining land."

It is urged that paragraph seven of these instructions is erroneous, because it does not limit the right to remove earth, stone, gravel, etc., from the right of way to such quantities as may be necessary for the purpose of the construction and repair of the railroad. The statute provides that "any railway corporation     *     *     *     may take and hold     *     *     *     so much real estate *as may be necessary* for the location, construction and the convenient use of its railway, and may also take, remove and use for the construction and repair of said railway and its appurtenances, any earth, gravel, stone, timber, or other material, on or from the land so taken." Code, § 1241.

The instruction complained of is in the language of this section of the law, so far as it applies to the removal of stone, earth, gravel, etc.

The restriction as to what is necessary applies to the quantity of land to be condemned, and not to the quantity of the materials named to be used in construction and repair. This cannot be made plainer than the statute makes it. Of course, the railroad has no right to wantonly destroy timber, or use earth for other purposes than the statute provides, and there is no conflict between the instruction in this case and the case of *Preston v. Dubuque & Pacific R. R. Co.,* 11 Iowa, 15. In that case the court erroneously instructed the jury that the R. R. Co. had the right to "destroy or appropriate the entire timber on the strip, if the company should deem it necessary or convenient so to do." No such right can be deduced from the instructions in this case.

There are other objections to the instructions to the jury, and to the refusal to give instructions, which we do not deem it necessary to consider in detail. It is enough to say that the instructions given appear to us to cover every question in the case in a clear, concise and perspicuous manner, and we find no error in them.                    AFFIRMED.