No. 31,665

J. C. BUTCHER, *Appellee*, v. THE KANSAS STATE HIGHWAY COMMISSION, *Appellant*.

(33 P. 2d 152.)

Opinion filed June 9, 1934.

*Wint Smith,* attorney for state highway commission, *Edward F. Arn,* assistant attorney for state highway commission, and *A. R. Enfield,* of Iola, for the appellant.

*G. R. Gard* and *Stanley E. Toland,* both of Iola, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an appeal from an award made by a jury in a condemnation proceeding. For the purposes of this opinion we shall speak of the property owner as plaintiff and of the state highway commission as defendant. Plaintiff owned a tract of about five acres of land situated just west of the corporate limits of the city of Iola and adjoining state highway No. 54 on the south. Near the northeast corner of this tract is a large residence. About 100 yards west there is a barn, 54 by 200 feet, fitted on the interior for a live-stock sales pavilion. South of this is another barn. There are a number of shade trees and two or three small residence houses on the tract. Cinders cover an area between the house and the barn for parking space, and there are fenced corrals for the handling of the live stock. Plaintiff used these premises for a residence and also

for the conducting, each week, of a public sale of live stock and farm machinery. The premises had been so used for about a year and a half prior to the condemnation. From 200 to 300 head of hogs, fifty to seventy-five cattle, several horses, farm machinery of almost every kind "from a needle to a threshing machine," and feed were brought there for sale. These sales were largely attended and were widely known throughout that and adjoining counties. Plaintiff's profits from these sales varied from $35 to $85 per week. Directly west of the large barn was a little stream known as Coon creek, about five to seven feet deep and nine to eleven feet across. It entered the premises from the north through a culvert on the highway, ran an irregular course to the south for a short distance, and then to the west out of the premises. Plaintiff, at considerable expense, had put stone along one side of the creek near the barn and a bridge to get back and forth to the portion of the tract west and north of the creek. The lay of the country was such that the drainage was from the north over an area of about 1,000 acres, and in times of high water the culvert in the highway was not large enough to carry the water, with the result that the land and the road would be flooded. To improve that condition defendant planned a larger culvert, making it twenty feet wide and eight feet deep, and also planned to widen and straighten the creek south of the highway and to condemn a strip of land fifty-five feet wide through plaintiff's premises for that purpose, and in this strip to excavate a new creek channel eleven feet deep, twenty feet wide at the bottom, and fifty-three feet wide at the top. As located and to be constructed this new creek channel took shade trees, required the removal of fences, destroyed corrals, and left a good-sized lot to the west of it which was inaccessible to the plaintiff from his barns and other portions of his premises. Plaintiff contended it would destroy the profitable use of the premises for sales such as he had been conducting. Apparently plaintiff thought the new channel for the culvert could have been made smaller and at a different location and with less loss to him, and he first brought an action to enjoin defendant from constructing the channel where it had caused the same to be surveyed and was preparing to construct it, and obtained a temporary injunction. Defendant filed, in the district court, its application to condemn the property sought to be taken, and commissioners were appointed to assess the damages. Plaintiff was not satisfied with their award and appealed to the district court. At

some time before this appeal came on for trial an order was made consolidating the injunction action brought by plaintiff with his appeal. Apparently defendant's counsel had not been notified of that order, or had overlooked it, until the trial had progressed for some time, and witnesses called by the plaintiff were interrogated as to the necessity or advisability of making this new channel of the creek through plaintiff's premises at the place and of the size planned by defendant. Defendant objected to evidence of that kind before the jury. The court ruled the cases had been consolidated without objection, and the testimony being proper on the injunction branch of the case, it would be received. In receiving this class of testimony, all of which was objected to by defendant, and in colloquies between court and counsel, and at times between the court and the witness, the court indicated that this evidence was for the jury as well as for the court. The court asked a witness:

"Now how in the name of common horse sense can you explain to this jury the necessity of that kind of a cavity . . . ?

"Let me ask another question here for the benefit of the jury and myself. . . ."

At another time the court stated to counsel, in the presence of the jury:

". . . the question of the advisability of this whole scheme is for this jury and this court, . . ."

Other similar, but less pointed, remarks of the court indicated that the necessity or advisability of the scheme or plan was to be considered by the jury as well as by the court. In its instructions, however, the court limited the jury fairly well to the determination of the amount of damages plaintiff would sustain. With respect to the amount of damages, witnesses called for plaintiff gave testimony from which the jury might have found his damages to be from $4,000 to $6,000. Under the direction of the court the jury visited and observed the premises and the location of the work to be done thereon. On the amount of damages, defendant called as a witness a Mr. Schlick, who gave testimony to the effect the damages were from $400 to $500. On cross-examination it was brought out that he was one of the commissioners appointed by the court to make an appraisement of the property at the time the condemnation proceeding was instituted. Whereupon the court ruled he was not a competent witness, and on its own motion withdrew from the jury all

of the testimony the witness had given. The court reprimanded counsel for defendant for having called him as a witness and counsel for plaintiff for not having objected to the witness testifying when he first took the stand. Defendant then made an offer in writing to prove by the witness on the stand and by the other two commissioners in the condemnation proceeding the value of the property before and after the taking by the proceeding, and specifically advised the court that it did not propose to show by these witnesses that they were commissioners, or the amount of their appraisement, but simply to use them as witnesses to the extent of the plaintiff's damage. The court refused the offer, and defendant called no other witnesses on that question. The jury returned a verdict for plaintiff for $2,000.

Defendant has appealed, and contends, *first,* that the court erred in striking out the testimony of the witness Schlick and in refusing to permit it to call the other two witnesses who had been commissioners; *second,* that there was confusion and error in the trial because of the taking of testimony on the injunction proceeding before the jury; *third,* because of prejudicial remarks by the court; and, *fourth,* that the court erred in admitting certain evidence.

Taking up these questions in their order. Was it error for the trial court to strike the testimony of the witness Schlick and instruct the jury not to consider it, on the ground that he was an incompetent witness by reason of the fact that he was one of the commissioners appointed by the court in the condemnation proceeding. No statute makes a witness incompetent for that reason, and the general rule is that he is not incompetent for that reason if otherwise qualified. (*City of Cape Girardeau v. Hunze,* 314 Mo. 438, 457, 284 S. W. 471; *Plank-Road Company v. Thomas,* 20 Pa. St. 91, 95; *Winklemans v. The Des Moines Northwestern Rly. Co.,* 62 Ia. 11, 17 N. W. 82; *Frosard v. Police Jury,* 3 La. Ann. 560.)

To the same effect is *Railway Co. v. Termier,* 85 Kan. 11, 116 Pac. 256. It would not be proper, of course, to show the amount of damages awarded by the commissioners, for the trial on that question was *de novo,* as though no award had been made previously. But no question of that character was asked of the witness Schlick, and counsel for defendant made it clear that matter would not be brought up. It was error for the trial court to rule him to be an incompetent witness and to withdraw his testimony from the jury.

In this court plaintiff's counsel does not seriously argue the ruling was proper, but contends defendant cannot complain of it, for it called no other witnesses, although there are in fact many persons in and about Iola familiar with land values whom defendant might have called as witnesses. The record does not show the existence of such other witnesses. We would have to assume that condition as being true. Defendant had the right to call any competent witness on the question of the amount of plaintiff's damages.

Was it error for the trial court to consolidate the injunction action with the appeal from the award of damages made by the commissioners? The matter of consolidating actions for the purpose of trial frequently rests within the sound discretion of the trial court. Here it appears the order had been made some time before the trial started, and no objection having been made to it the trial court naturally assumed no complaint would be made of it. The questions involved in the two proceedings, however, were entirely distinct. The one involved the authority and apparently the prudence or wisdom of defendant in condemning plaintiff's property for the purposes for which it was taken. The other involved simply the amount of damages plaintiff would sustain by the taking of the property. It is difficult to see how those two matters could be tried at the same time, one to the court and the other to the jury, without prejudice to the litigants. Even if that were possible, the record before us indicates the matter was handled in such a way that prejudice to defendant was almost sure to result. In the progress of the trial it was repeatedly stated by the court that the right of defendant to make the contemplated improvement in the manner it planned was for the consideration of the jury as well as for the court. While it is true the only question ultimately submitted to the jury was the amount of plaintiff's damages, it is difficult to see how other matters specifically called to the jury's attention in the progress of the trial could be wholly eliminated by the jurors in reaching their verdict. Certainly it would have been much more appropriate to try to the jury the sole question of the amount of the damages.

Appellant in this court complains of remarks of the trial court as having been prejudicial. We are unable to find from the record that this question was presented to the trial court on the hearing of the motion for a new trial, hence it is not available to appellant

here. Appellant complains also of the introduction of certain testimony. This, as we understand the complaint, went to testimony on the injunction side of the case and will not arise on a new trial, as we are advised by counsel that the injunction case has been finally disposed of.

For the errors previously discussed the judgment of the court below is reversed with directions to grant a new trial on the sole question of the amount of plaintiff's damages.