**CITY OF ST. LOUIS, Plaintiff-Appellant,**

v.

**Ellen VASQUEZ et al., Defendants-Respondents.**

**No. 47449.**

Supreme Court of Missouri,
Division No. 1.

Dec. 12, 1960.

Motion for Rehearing Denied and Opinion Modified on Court's Own Motion
Jan. 9, 1961.

Thomas J. Neenan, Oliver T. Johnson, Andrew J. Reis, St. Louis, Walter Wehrle, Thomas W. Wehrle, Clayton, for appellant.

Howard Elliott, Edward D. Weakley, St. Louis, for respondent.

HOUSER, Commissioner.

The City of St. Louis, desiring to add to Lambert-St. Louis Field, a public airport and landing field in St. Louis County owned by the city, brought proceedings in the Circuit Court of St. Louis County to condemn a tract of 14.29 acres, part of a larger tract of 34.9 acres owned by Ellen Vasquez. On January 5, 1953 the commissioners filed their report, awarding damages of $32,-152.50. The amount of the commissioners' award was paid into court on February 21, 1957. The case was tried to a jury on the landowner's exceptions. The jury awarded damages of $114,320 for the taking, $20,160 residual damages, and $13,448 interest from February 21, 1957 to the date of the verdict, October 31, 1958, in the total sum of $147,928. After certain adjustments hereinafter discussed, the trial court entered final judgment for Ellen Vasquez for $152,868.83. The city appealed.

We have appellate jurisdiction. The record affirmatively shows that the judgment of the trial court is more than $7,500 in excess of an amount to which the city contended the landowner is entitled. Constitution, Art. V, § 3, V.A.M.S. State ex rel. Chariton River Drainage District v. Montgomery, Mo.Sup., 275 S.W.2d 283.

Appellant contends that the court erred in giving Instructions 1 and 2; in refusing Instruction A; in its allowance of interest; in the admission of evidence; in its actions with respect to certain statements and arguments of counsel before the jury, and that the verdict is excessive.

We will set forth Instructions 1 and 2 verbatim, italicizing the portions to which appellant takes exception, and for ready reference lettering the particular language appellant considers improper.

### Instruction No. 1

*"The Court instructs the Jury that under the Constitution of Missouri the private property of the defendant, Ellen Vasquez, cannot be taken by the plaintiff, City of St. Louis, for public use with-*
(a) *out just compensation being paid by the City to the owner, Ellen Vasquez, and the law of Missouri gives Ellen Vasquez the right to*

have such just compensation determined by this Jury for such taking. The City has taken 14.29 acres, of defendant Ellen Vasquez's land, *bounded on the south by (Brown Road) the main line and switches of the Wabash Railroad, and on* (b) *the west by Eva Avenue and the Wabash switch tracks,* and on the east by the Fordyce lands, now owned by St. Louis University, and on the north by the remaining land of Ellen Vasquez. Your verdict, therefore, must be for Ellen Vasquez. In assessing the just compensation due her you must allow her the fair market value as of February 21, 1957, for 14.29 acres, as shown by the evidence.

"The term 'fair market value' means the price which her property would bring when offered for sale by one willing but not obliged to sell it, and is bought by one willing or desirous to purchase it but is not compelled to do so. *Fair market value does not mean the price it would bring where the party selling is forced to sell, or where it is sold for other consid-* (c) *erations in addition to the money paid, but rather what the land would fairly bring in the hands of a prudent seller at liberty to fix the time at which she would sell and the conditions under which she would sell.* The question is, if the defendant Ellen Vasquez wanted to sell her property, what could have been obtained for it upon the market from parties who wanted to buy it on February 21, 1957, and would give her its full value for its highest and best use?

*"In determining its fair market value the Jury should take into consideration its location, the uses for which it is suitable at such lo-cation, its zoning, available utilities and municipal services, if any, proximity to transportation, if any, and all the uses to which it may best be applied or for which it is* (d) *best adapted, having regard not alone for the existing business wants of the community but also such uses as may be reasonably expected in the immediate future, and comparing with the sales and prices most recently obtained at or about the time of the taking for comparable lands with the same facilities in the area.* In determining the uses and purposes for which Ellen Vasquez's lands were suitable or adaptable, the Jury is not confined to the use made of the land at the time it was taken."

Instruction No. 2

*"In assessing damages sustained by the defendant by the taking of her land, you are instructed that her land is to be regarded as one unit, although made up of two* (e) *parts, and her damages consist not only of the reasonable value of the 14.29 acres of land taken, but in addition, the injury to or reduction in the value, if any, to the remaining 20.16 acres of her land, caused by the taking.*

"Such damage to the remainder, if any, must be direct and certain at the time of the taking, February 21, 1957. In fixing such damage, if any, to the remainder, *you will take into consideration all facts in evidence relating to the condition of the remainder property as a result of the taking, which* (f) *would naturally impress a reasonably prudent buyer in negotiating for the purchase of the remainder,*

*including its separation into a smaller tract, the reduction in size, the reduction in value, if any,*

*caused by the decrease in demand for the land, if any, the decrease* (g) *in value, if any, in its being separated from transportation, if any, and for such damages, if any, caused by the establishment, erection and maintenance of the high airplane light standards adjacent to defendant's lands,*

*and all matters mentioned in the evidence, which owing to the taking of the land affects the further* (h) *use, enjoyment and value of the land as a whole, in so far as it affects the market value thereof."*

■ Appellant contends that (a) "was abstract and emphasized a foreign issue," and "presented no fact issue and embraced no constitutive elements for consideration in arriving at the damages, the sole issue for the jury." Language such as (a) is abstract in nature, immaterial to the precise issue on trial, and unnecessary. It is better and safer practice to omit this material in drafting instructions in this type of case. The giving of an instruction containing this material, however, does not constitute reversible error unless it appears that the complaining party has been prejudiced or the jury misled thereby. State ex rel. State Highway Commission v. Haid, 332 Mo. 606, 59 S.W.2d 1057; Chicago, R. I. & P. Ry. Co. v. Hosman, 227 Mo.App. 659, 57 S.W.2d 434; State ex rel. State Highway Commission v. Leftwich, Mo.App., 263 S.W.2d 742; State ex rel. State Highway Commission v. Williams, Mo.App., 263 S.W.2d 444. In State ex rel. State Highway Commission v. Goodson, 365 Mo. 260, 281 S.W.2d 858, 861, and State ex rel. State Highway Commission v. Huddleston, Mo.App. 52 S.W.2d 33, judgments in condemnation cases were reversed for the giving of instructions containing language similar to (a). In Goodson the instruction contained additional language specifically referring to condemner's right to take defendants' property "without their consent and against their will." In those cases the landowner gave

evidence indicating strong opposition to the condemnation. Since the taking was without his consent and against his will, such an instruction was deemed prejudicial in that it inflamed the minds of the jurors, aroused sympathy for the landowner and resulted in a larger verdict than an impartial consideration would have warranted. There was no evidence before this jury that Ellen Vasquez had strong feelings against this taking, or that it was against her will. She did not testify. The words "without her consent and against her will" were not included in (a). We find nothing in this record to indicate that the inclusion of (a) inflamed the minds of this jury, aroused sympathy for respondent, or otherwise prejudiced the rights of appellant.

■ Appellant contends that (b) constitutes an erroneous description of the appropriated land because it failed to instruct that the property was separated from Brown Road and Eva Avenue by a drainage ditch, as established by "all of the evidence in the case," thus and thereby inferentially instructing the jury "that the appropriated property had direct access to roads and highways." There is no basis for such an inference. The description should be sufficiently certain to identify the property condemned, but for this purpose a description using the points of reference and monuments employed and as described by the witnesses and referred to in the exhibits is sufficient. The description in Instruction 1 refers to the 14.29-acre tract, as to which there was no dispute. The maps, charts and diagrams in evidence thoroughly and in detail described and exemplified the streets and highways, drainage canal, ditches, railroad tracks, switches and right of way, which constitute the boundaries of this property. Appellant's own witness, Hallauer, used almost the same language as that of the instruction in describing the boundaries. The jury had every opportunity to be thoroughly familiar with the nature and extent of the south and west boundaries, and could not have been misled by the description in (b).

■ Appellant contends that (c) is an erroneous definition of "fair market value," because from it the jury could infer that *respondent* had a right to fix the time, price and conditions under which *she* would sell the property. Considering not merely this one of the several sentences defining "fair market value," but considering all of them together and as a whole, we approve of the definition. The substance of the first sentence of the second paragraph was approved in City of St. Louis v. Smith, 325 Mo. 471, 30 S.W.2d 729, loc. cit. 732. In Metropolitan St. Ry. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860, this Court declined to condemn language almost exactly like (c), except for the use here of the word "she" in referring to the seller (an immaterial difference). The third sentence in the second paragraph supplies the element missing from (c), namely, the desire of the potential buyer to buy and pay full value for its highest and best use. The several sentences read together provided a proper set of standards to guide a jury in determining fair market value in this case.

■ Appellant further contends, however, that the language of (d), which uses the word "should" instead of "may," condemns the instruction; that it sets out the items of damages argumentatively, comments on the evidence, is abstract, gives the jury a roving commission, and, omitting consideration of other sales, authorizes the jury to determine the fair market value by taking into consideration sales and prices of land *most recently obtained*. In determining fair market value the jury SHOULD consider the proper elements which bear on the question. The Court followed standard practice in using the word "should." While (d), and for that matter Instruction 2, contains matter that is argumentative, in a sense, and while (d) and No. 2 recite certain evidential elements which would be better left to argument,[1] we are not willing to reverse the judgment for this reason,

having in mind previously approved instructions similar in form and content. (d) properly directs the jury to consider "the sales and prices most recently obtained at or about the time of the taking for comparable lands with the same facilities in the area." Condemned property is to be valued as of the time of the taking; as of the date of its appropriation. Chicago, M. & St. P. R. Co. v. Randolph Town-Site Co., 103 Mo. 451, 15 S.W. 437. State ex rel. State Highway Commission v. Deutschman, 346 Mo. 755, 142 S.W.2d 1025. On a market of ascending values the shorter the interval between the sales of other similar properties and the date of the appropriation, the more important such sales become in establishing fair market value. City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W.2d 853, loc. cit. 856. We find no fault with the "most recently obtained" clause above quoted, under the evidence admitted in this case. This language did not "in effect" tell the jury to "disregard" the 1955 evidence, as contended. The date of the appropriation was February 21, 1957. The Court admitted in evidence testimony with reference to three sales: one in August, 1955 for $4,500 an acre; one on December 20, 1956 for $13,000 an acre, and one on March 20, 1957 for $13,000 an acre. When appellant sought to prove the 1955 sale counsel for respondent objected on the ground of remoteness, contending that the latter two were the "most comparable" sales. The Court overruled the objection and admitted the evidence of the 1955 sale. Under these circumstances the jury could not reasonably have interpreted "sales and prices most recently obtained" to exclude the 1955 sale and include only the 1956 and 1957 sales.

■ Appellant contends that (e) is a verdict-directing instruction which "fails to state any facts to support a finding by the jury that there was an injury to or reduction in value to the remaining 20.16 acres."

1. See State ex rel. State Highway Comm. v. Volz Concrete Materials Company, Mo. Sup., 330 S.W.2d 870, loc. cit. 875, for the same thought as applied to damage instructions in condemnation cases.

This contention fails. The direction of a verdict was not accomplished in Instruction 2, but in the third sentence of the first paragraph of Instruction 1: "Your verdict, therefore, must be for Ellen Vasquez." The portion of Instruction 1 following the direction of a verdict relates to the assessment of damages for the taking of the 14.29 acres. Instruction 2 relates to the assessment of consequential damages to the remaining 20.16 acres. Only a part of a tract was condemned, a fact which was uncontroverted, so that there was no necessity of submitting that admitted fact. The measure of damages in such case is the market value of the land actually taken, and the consequential damages, if any, to the remainder of the land caused by the taking. City of St. Louis v. Kisling, Mo.Sup., 318 S.W.2d 221, loc. cit. 224; St. Louis, K. & N. W. R. Co. v. Knapp, Stout & Co. Company, 160 Mo. 396, 61 S.W. 300, loc. cit. 303, 304; City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W. 2d 149, loc. cit. 153. (e) expressed this rule. (e) did not assume the existence of consequential damages. Note the inclusion of the words "if any," in both paragraphs. The entire second paragraph submits facts for the consideration of the jury—facts which, if found, would support a finding of consequential damages.

■ Appellant contends that (f) gave the jury a roving commission to determine what facts would naturally impress a reasonably prudent buyer in negotiating for the purchase of the remainder, without hypothesizing sufficient facts to guide the jury in determining the issue, and that (f) and (h) are argumentative. Appellant cites Kansas City, C., C. & St. J. Ry. Co. v. Couch, Mo.Sup., 187 S.W. 64 and State ex rel. State Highway Commission v. Day, 226 Mo.App. 884, 47 S.W.2d 147. In almost exactly the same language as (f) it was held in the Paramount Shoe case, supra, 168 S.W.2d loc. cit. 153, that "In estimating the amount of consequential damages sustained * * * the owner is entitled to have the jury informed as to all those facts relating to the condition of the property which would naturally impress a person of ordinary prudence in negotiating for the purchase of the same." The language of (f) limited the consideration of the jury to the facts in evidence and therefore did not give the jury a roving commission, and in this respect (f) is different from the language of the instruction condemned in Day, which authorized the jury to consider "anything that would injure the salable value of the farm," thus "authorizing the jury to consider anything that might occur to it which it might think rendered the use of the land less valuable." State ex rel. State Highway Commission of Missouri v. Caruthers, Mo.App., 51 S.W.2d 126, loc. cit. 132. The Couch case is distinguishable from the instant case for the same reasons which distinguished it from the Caruthers case, as stated at 51 S.W.2d loc. cit. 131, 132.

■ Appellant contends that Instruction 2 sets out the elements of damages argumentatively; comments on the evidence; that the items of "separation into a small tract" and "the reduction in size" overlap, and that it permitted the jury to return double damages for the appropriation of the 14.29 acres. In point is Caruthers, supra, in which an instruction on consequential damages concluding with language permitting the jury to consider "generally all like matters mentioned in the evidence, which, owing to the location of the road, affects the further uses and enjoyment of the farm as a whole in so far as same affects the market value thereof," was approved as not argumentative and not a comment on the evidence. Appellant's contention that (f), (g) and (h) allow double damages is based upon State ex rel. State Highway Commission v. White, Mo.App., 254 S.W.2d 668, but that case is not in point. The language which effected a reversal in that case was applied to *the land appropriated,* thereby allowing the jury "to twice include the value of the land taken," 254 S.W.2d loc. cit. 672, whereas the language criticized here applied only to consequential damages

to the land remaining. There is overlapping in (g) but the error is harmless. The obvious restatement of the same thing in different words would not cause any reasonable jury to give that element undue consideration and we are not persuaded that this overlapping prejudiced appellant's rights.

■ Appellant contends that the court erred in refusing Instruction A, which undertook to define "fair market value," for the reason that it incorporated an essential element of market value not embraced in Instruction 1, namely, the concept that market value does not mean speculative value. There was no error in refusing to instruct on this element, however, because no evidence of the speculative value of the land was introduced in this case. The testimony which went to the jury touching the value of the land appropriated was the opinion testimony of experts in the field of real estate appraisals relating to the actual market value of the land in question, for the highest and best use of the property. Their estimates were based upon facts and not upon fancies, hopes, possibilities or contingencies. There was no occasion to caution the jury not to make an award based upon speculative values.

■ Appellant next contends that the court erred in entertaining and sustaining respondent's motion for interest on the commissioners' award from the date of the award to the date the money was paid into court, and in adding that amount to the verdict of the jury; and in giving Instruction 3, under which respondent received a verdict for interest on the total amount of the damages from the date the money was paid into court until the date of the verdict. Appellant asserts that at the time the court took these actions "there was no statute in this state authorizing interest of (sic) this type of proceeding * * *," and that § 523.045 (Laws 1959, S.B. No. 248, § 1), "providing for interest in this kind of case, did not become effective until August 29, 1959," and that Supreme Court Rule 86.10,

V.A.M.R., did not take effect until April 1, 1960, "after the happening of the events complained of herein." The commissioners awarded $32,152.50 on January 5, 1953. .The city deposited this sum in court on February 21, 1957. In October, 1957 respondent filed a motion to require the city to pay into court interest at 6% on $32,152.50 from January 5, 1953 to February 21, 1957. On May 29, 1958 the court sustained this motion. The record does not show that the city paid the sum into court, pursuant to that order. The trial occurred in October, 1958. At the conclusion of all the evidence respondent offered and the Court gave Instruction 3 by which the jury was instructed that respondent "is entitled to interest on the total amount of damages * * * sustained by her by reason of the taking of her land by the City * * * computed * * * from the date of the taking herein, February 21, 1957, to the present date." The jury found damages of $134,480 and pursuant to Instruction 3 awarded interest in the sum of $13,448, as a separate item. Thereafter respondent properly remitted $3,027.67 interest (the jury, not knowing of the payment of the $32,152.50, had innocently but improperly calculated interest on the entire $134,480 without crediting the previous payment) and the court made an adjustment therefor in the final judgment. The court also added $7,968.46 to the verdict of the jury as thus corrected (the interest ordered paid on May 29, 1958, when the court sustained the respondent's motion for interest from January 5, 1953 to February 21, 1957). Where the jury awards damages in excess of the commissioners' award "just compensation" within the meaning of Constitution, Art. 1, § 26, requires an allowance of compensation to the landowner for the loss of the use of the amount of money by which the circuit court judgment exceeds the award of the commissioners, from the time of the taking or appropriation until the entry of judgment fixing the amount of the damages. St. Louis Housing Authority v. Magafas, Mo. Sup., 324 S.W.2d 697. The date of the appropriation is the date the condemner pays

into court the amount of the commissioners' award, § 523.040 RSMo 1949, V.A.M.S.; Kansas City Southern Ry. Co. v. Second ·Street Imp. Co., 256 Mo. 386, 166 S.W. 296, loc. cit. 302, State ex rel. State Highway Commission v. Houchens, Mo.App., 235 S.W.2d 97, conceded to be February 21, 1957 by respondent, whose offered Instruction 3 so recites. The interest was "computed by the jury and included in its verdict," as required by State ex rel. State Highway Commission v. Green, Mo.Sup., 305 S.W. 2d 688, loc. cit. 693. The action of the court with respect to the allowance of delayed compensation or interest for that period was correct and proper. But the action of the court in adding to the jury's verdict an amount of interest for the preceding period (from the date of the filing of the commissioners' report until the date of the taking), cannot be sustained. In Green, supra, we decided that a trial court has no power "to add any amount to the sum fixed by the jury in its verdict (except when authorized by statute) but must enter a judgment for the sum stated therein." 305 S.W.2d loc. cit. 693. Const., Art. 1, § 26, provides that the just compensation to which a property owner is entitled for the taking of private property for public use "shall be ascertained by a jury * * *, in such manner as may be provided by law; * * *." Section 510.270, RSMo 1949, V.A.M.S. provides that in actions for the recovery of money only tried to a jury, the jury "shall 'assess the amount of the recovery.'" Green, supra, 305 S.W.2d loc. cit. 694. In the instant case respondent's exceptions to the commissioners award requested "that a new appraisement be made by a jury, * * *." When a jury trial is requested all issues of damages must be tried together and not piecemeal, some by the court and some by the jury. Damages in condemnation cases are found as a unit. And after the verdict of the jury fixing the damages has been returned the judge has no power to add a further allowance for some item of damages not submitted to the jury. The judge can amend a verdict after the discharge of the jury as to " 'matters of form or clerical er-

rors clearly made manifest by the record, but never to matters of substance required to be passed on by the jury, which, in their nature, are essential to the determination of the case.'" Green, supra, 305 S.W.2d loc. cit. 694, quoting from Meffert v. Lawson, 315 Mo. 1091, 287 S.W. 610, loc. cit. 612.

Appellant contends that the court erred in admitting in evidence the following:

■■■ (1) Testimony by Leo Vasquez that since the beginning of the industrial expansion in that area there had been "a marked number of inquiries" addressed to him by persons who wanted to purchase his mother's land. The ground of the objection was that such inquiries are "the same as" efforts to buy, or offers to buy; that offers to buy are inadmissible on the question of value, as hearsay. This was not the equivalent of an offer to buy, and was not inadmissible for the reasons (stated in Nichols on Eminent Domain (2d Ed.), Vol. 2, p. 1194, § 454) that an offer to buy is inadmissible. This testimony, indicating an active interest in the land in question on the part of prospective buyers, was relevant on the question of the general desirability of and demand for this land. An ordinarily prudent person would take into consideration the demand or lack of demand for the land, as a basic element in reaching a conclusion, upon the basis of other evidence, as to its fair market value.

■■■ (2) Testimony of Leo Vasquez that the value of the land appropriated was $186,000 and that the residual damages were $51,000. The grounds for the objection were that he did not own the land and was not qualified to express. an opinion as to its value, and that his opinions were based upon hearsay. The objection that Leo Vasquez was not the owner of the land is not valid. An agent of the owner, in charge of the management of the property, who for years has been familiar with the property, its location, etc. and is sufficiently familiar with the market value of property in the neighborhood, is competent to testify

to its value. In Diedrichs v. Northwestern Union Ry. Co., 47 Wis. 662, 3 N.W. 749, it was held that one who acted for several years as the agent of the owner in looking after his property, paid the taxes, collected rents, leased it and received offers to purchase, and who was personally well acquainted with the land, "certainly had the most ample means to form an intelligent opinion, derived from an adequate knowledge of the situation and value of the property, to render him competent to answer the question * * *" as to the market value of the property. 3 N.W. loc. cit. 751. The owner, Ellen Vasquez, 76 years old and afflicted, became unable to handle her affairs. Her son Leo, 45 years of age, lived in the same house with her and on the same property since 1920, a period of 38 years. Leo began managing his mother's affairs and handling the property in question in 1942 or 1943, some 15 or 16 years before trial. In 1945 he sold 11.14 acres of the land to the Wabash Railroad, which purchased the land to develop the area for its customers. He was thoroughly familiar with the land in question and the surrounding lands on all sides. He had been "all over" them. He knew where the municipal corporation boundaries were located and in which sites the surrounding tracts lay. He had served as Fire Commissioner of the City of Berkeley, in which the lands in question were located. He knew what municipal services, such as police and fire protection, water, sanitary sewer, industrial gas, etc. were available. He knew the zoning (heavy industrial) of his mother's and surrounding lands, the topography, drainage, soil, roads, highways, railroad switching facilities and connections, airports, etc. As a grading and excavating contractor he had helped to develop and improve the adjacent and next adjacent tracts for industrial purposes. In the management of his mother's affairs he had investigated sales and market values of tracts in the surrounding area. He had talked to others who had bought and sold real estate in the community. He had employed real estate title men and lawyers to investigate the land records and from them he had received reports as to the sales of other properties in the community. He had personally looked at records in the Recorder's Office. Leo Vasquez was unusually well qualified to express an opinion as to the market value of the land. We now consider the objection that Leo Vasquez' testimony as to market value was based upon hearsay. On cross-examination of Vasquez counsel for appellant elicited that in forming an opinion as to value he had taken into consideration, among other things, reports he had received from others and from those who investigated for him. When asked if he had collected this information from other people and records "for the purposes of this trial as a witness" Vasquez answered "Not entirely." Counsel objected that he was an incompetent witness on the question of value because his opinion was based partly, if not entirely, upon the work and investigation of others who reported to him, and therefore was hearsay. The court then reversed its ruling, struck out Vasquez' testimony and instructed the jury to wholly disregard it. The city moved that the jury be discharged and a mistrial declared, and it is the refusal of the court to discharge the jury of which appellant now complains. The objection is that "said incompetent and improper evidence" was not expunged from the minds of the jury by the admonition of the court. This objection cannot stand. While there is eminent authority for the proposition that the competency of an expert witness on values may not be attacked on the ground that he has considered hearsay or sales that would otherwise be inadmissible, 5 Nichols on Eminent Domain, 3rd Ed., § 18.4, loc. cit. 149, Winklemans v. Des Moines N. W. R. Co., 62 Iowa 11, 17 N.W. 82, loc. cit. 83, Hanover Water Co. v. Ashland Iron Co., 84 Pa. 279, loc. cit. 285, United States v. 5139.5 Acres of Land, etc., 4 Cir., 200 F.2d 659, loc. cit. 661, 662, and authorities cited, (but see the other view, expounded in United States v.

Katz, 1 Cir., 213 F.2d 799, loc. cit. 801), it sufficiently disposes of this objection to say that there is no showing of any abuse of discretion in the trial court's refusal to declare a mistrial. The determination of the sufficiency and effectiveness of an admonition to disregard stricken evidence is a matter within the sound discretion of the trial court, with which an appellate court will not interfere in the absence of a showing of abuse of discretion. Furthermore, appellant's counsel refreshed the recollection of the jurors with respect to the testimony now considered by appellant to be so damaging, by referring in deprecatory fashion to "this witness * * * who testified these 14 acres were worth $186,-000" and by asking whether "this $186,000" opinion was based upon the fact that lights were placed there and airplanes "are coming in?" The case of School Dist. of Kansas City v. Phoenix Land & Improvement Co., 297 Mo. 332, 249 S.W. 51, in which the failure of the trial court to declare a mistrial for improperly admitting the opinion testimony of one of the commissioners in the case was held reversible error, is not authority in the instant case. Vasquez was not a commissioner appointed by the court with the standing and sanction of an official or impartial point of view, but was the agent and son of the owner, with a decided interest in the outcome of the trial.

■■■■ (3) Testimony concerning the sale of two tracts by St. Louis University to Union Electric Company. The first tract, 1.68 acres, was sold for $13,000 an acre on December 20, 1956. The second tract, 3.18 acres, was sold for $13,000 an acre on March 11, 1957. The objection is that these lands were not comparable in any respect with the Vasquez property; that they were not of like character and were not similarly situated. Appellant points out that the Vasquez tract of 34.9 acres fronted on Frost Avenue, an 18-foot rock road, but that there is no physical access to the 14.29 acres of unimproved land taken; that a drainage ditch and the rail-

road right of way and switch tracks separate the property from Eva Avenue (a dirt road .4 miles long, often impassable) and from Brown Road; that Union Electric's two small tracts front on Graham Road, a paved blacktop road which runs from Airport Road to Lindbergh Boulevard, and that they are level and on grade with Graham Road, whereas the Vasquez property, from a point 215 feet south of the north line of the 14.29 acres, drops approximately 3½ feet to the south and east, and the lowest part is about 15 feet below the grade of the Wabash Railroad. Sales of land of like character and similarly situated to that in question, not too remote in point of time, are admissible on the question of value as an aid to the jury in determining the damages to which the owner is entitled. City of St. Louis v. Kisling, Mo.Sup., 318 S.W.2d 221. The importance of other sales depends not only on their proximity in point of time but also upon "similarity in location, and in *the uses to which the properties may be adaptable,*" City of St. Louis v. Buselaki, 336 Mo. 693, 80 S.W.2d 853, loc. cit. 857 (emphasis ours), as well as in similarity of size of the tracts being compared. No two parcels of land are exactly alike. "It is evident that there may be considerable difference in the size, shape, situation, and immediate surroundings of two estates, and perhaps in other respects, and yet the price which one brought may be of substantial assistance in determining the value of the other." 5 Nichols on Eminent Domain, § 21.3, pp. 276, 277. It is for the trial judge to exercise a wise judicial discretion in determining whether the two parcels are of sufficient similarity to have some bearing on the question of value. 18 Am.Jur., Eminent Domain § 351, p. 995; Missouri Public Service Company v. Hunt, Mo.App., 274 S.W.2d 27. The jury verdict will not be upset on the ground of dissimilarity unless the trial court abuses its discretion, by permitting the consideration of sales so dissimilar in pertinent comparison factors as to give the jury no assistance in the determination of the market

value. City of St. Louis v. Buselaki, supra. The trial court is allowed a considerable latitude in this respect. City of St. Louis v. Kisling, supra; Kansas City & G. Ry. Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, 84 A.L.R. 1477. The two adjoining tracts purchased by Union Electric within 90 days of each other, totaling 5.86 acres, should be considered together (and *were* considered "as a group" by one witness for *appellant*). These two tracts, purchased for a work headquarters and a shed, were added to the 5.94 acres acquired by Union Electric in 1955 for use as a substation. The three tracts, totaling 10.80 acres, purchased by Union Electric, were used to facilitate the business and operations of that utility, just as the 14.29 acre tract was acquired by the city to facilitate the operations of the city's airport (to accommodate additional lights for use in landing operations). The uses to which the utility and the city put the tracts they purchased (e. g., to facilitate their respective operations) were comparable uses of land. Likewise the Union Electric acquisitions were comparable to the 14.29 acres in proximity, zoning, municipal services, general topography and other attributes. The differences (in acreage, immediate accessibility to a paved road, etc.) were not so disparate as to make them incomparable as a matter of law. The decision to admit the evidence of these other sales was made in the reasonable exercise of the discretion of the trial judge, and no abuse of discretion is indicated. City of St. Louis v. Kisling, supra, and St. Louis, O. H. & C. Ry. Co. v. Fowler, 142 Mo. 670, 44 S.W. 771, cited by appellant, are cases in which this court upheld the discretion of the trial judge in *excluding* evidence of the sales of small lots where the tracts condemned consisted of substantial acreages. The disparity in size, differences between the uses to which the tracts were adaptable, and other considerations distinguish these cases from the instant situation.

Appellant contends that the court erred in refusing to declare a mistrial for misconduct of respondent's counsel. Appellant's counsel, in cross-examining Union Electric's right of way agent, elicited the fact that in the summer of 1957 Union Electric and St. Louis County negotiated a sale of 3.02 acres, part of the tract acquired from St. Louis University, and inquired what the county paid therefor. The agent denied knowledge of the details of the transaction, stating that the company's attorney handled the matter. Persisting, appellant's counsel suggested in the form of a question that the price was $2,500 an acre (the same land that respondent's witnesses had testified sold for $13,000 an acre a few months previously). Counsel for respondent promptly produced the company attorney as a witness and asked him to state the consideration for the 3.02 acreage. Counsel for appellant strenuously objected. After six objections were sustained, the witness, finally permitted to answer, explained that the transfer of the 3.02 acres was only one of seven facets in a complicated transaction between the county and utility in which several matters were compromised and settled and that he could not testify exactly what amount was allocated to the 3.02 acres, but that he knew the total consideration paid and could give "the whole story." Respondent's counsel sought to separate the various facets of the transaction in an attempt to show the consideration for the 3.02 acres. Counsel for appellant made fifteen objections on various grounds, two motions for a mistrial and one motion to strike. None of the evidence was admitted, the court finally concluding that the sale was not comparable because of the complications in the compromise settlement. Finally, counsel for respondent asked the company attorney: "Did you tell [counsel for appellant] in the hall the testimony that you were going to give on this stand?" This was objected to as prejudicial, incompetent, and an insinuation of misconduct on the part of the plaintiff. The objection was sustained, but a motion to declare a mis-

trial was denied. If improper, the question was not necessarily prejudicial. The trial court is invested with a wide discretion in determining whether prejudice has resulted from the asking of improper questions and whether the curative action taken is sufficient. No abuse of discretion is shown. Later respondent's counsel asked another witness whether he was present when the company attorney was brought in "to tell the facts" with respect to the 3.02 sale, "and [counsel for appellant] didn't want him to testify?" The court refused a motion to declare a mistrial, but directed the jury not to consider the above and to strike it out and pay no attention to it. Counsel for appellant introduced the question of the sales price of the 3.02 acres, a legitimate field of inquiry, but in so doing asked the agent the question: "Twenty five hundred an acre; you remember that?," after the witness had testified that he did not know the price paid. Apparently this question was asked without any foundation in fact. It raised doubts about respondent's testimony that this same land sold for $13,000 an acre. All that followed occurred in an effort to offset the gratuitous and unproved suggestion of appellant's counsel that the latest sale brought only $2,500 an acre. In vigorously opposing the inquiry into the question he opened up, counsel found himself in an apparently inconsistent position. While it was improper to pose a question imputing to counsel the motive of trying to exclude pertinent testimony, the corrective action taken was sufficient. No abuse of discretion in not declaring a mistrial is shown.

██ ██ Appellant complains about the argument to the jury. We consider only the arguments referred to in the motion for new trial, namely, that counsel for appellant did not want the utility company's attorney to testify about the sale price of the 3.02 acres and that counsel for appellant tried to keep these facts from the jury by making objections, and the argument that Ellen Vasquez was not in a financial position to hire as many paid experts as the city. The first argument was fair comment, under the facts

of this case. The second conveys the idea that the city can afford to produce more expert witnesses on land value than this individual landowner could produce, and was improper. It compares the financial condition of the respective parties and is of the character of argument that is likely to arouse the passions and prejudices of a jury. The court properly and promptly sustained an objection to the argument and instructed the jury to disregard it. The only question before us is whether the court abused its discretion in not going further and declaring a mistrial. We have read the argument and considered it in context. Although it was improper we are not prepared to say that it was so inflammatory and arousing that it destroyed the city's opportunity to have the case considered impartially and fairly, or that the trial court abused its discretion in determining that the composure of the jury was not affected.

██ ██ Finally, appellant contends that the verdict is excessive. We will not interfere with the amount awarded for actual and residual damages, because the jury's verdict for these amounts is supported by substantial evidence. On actual damages, thoroughly qualified, competent and unimpeached experts testified that the per-acre market value of the 14.29 acres taken was as follows: Weber, $10,890; Martin, $11,000; Bakewell, $11,000 and that comparable tracts in the vicinity had sold quite near the time of the taking for $13,086 per acre. One witness testified that there was residual damage in the sum of $26,920. Other testimony indicated that the 20.16 acres remaining were damaged to the extent of $1,000 an acre. The jury awarded $20,160 residual damages. Appellant would have us consider the disparity between the commissioners' award and the jury verdict. Such disparity is no reason to interfere where the verdict is supported by substantial evidence.

If within 15 days after this opinion is filed respondent will remit from the judgment the sum of $7,968.46, the judgment, after such remittitur, will be affirmed as of

October 31, 1958; otherwise the judgment is reversed and the cause remanded for trial in accordance with this opinion.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.