STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Plaintiff-Appellant,

v.

KING BROTHERS MOTEL, INC., a Corporation, et al., On Exception of Edward J. Keller and Emma J. Keller, Defendants-Respondents.

No. 31510.

St. Louis Court of Appeals.

Missouri.

March 16, 1965.

Robert L. Hyder, Jefferson City, Samuel C. Ebling, Kirkwood, for plaintiff-appellant.

Husch, Eppenberger, Donohue, Elson & Cornfeld, Carroll J. Donohue, Myron Gollub, St. Louis, for defendants-respondents.

DOERNER, Commissioner.

This appeal recently came to the writer by a reassignment. By this action the State Highway Commission condemned right-of-way for the improvement of U.S. Highway 40TR, otherwise known as the Daniel Boone Expressway, from Lindbergh Boulevard east to Brentwood Boulevard in the County of St. Louis. Both the plaintiff and the Kellers, the landowners here involved, filed exceptions to the Commissioner's report and the cause was tried to a jury. From a verdict and judgment in favor of the defendants for $16,000 the plaintiff appealed. Since the plaintiff admitted a minimum damage of $2350 the amount in dispute, exclusive of costs, is $13,650, and we therefore have jurisdiction. State ex rel. Burcham v. Drainage District No. 25, Mo., 271 S.W.2d 525.

The property affected by the appropriation consisted of an irregularly shaped lot containing one acre, described as Lot No. 1 in Daniel Boone Subdivision, in the City of Ladue. The improvement thereon consist-

ed of a ranch type residence built of Roman brick, 100 feet in length, containing a living room, dining room, family room, kitchen, three bedrooms, two baths, and an attached garage. The house faced approximately northeast. The surrounding neighborhood was composed of single family, high quality type homes of substantial value. Prior to the changes made by plaintiff the property was bounded on the north by a ramp running from Route 40 (an east-west highway) to McKnight Road; on the east by McKnight Road; and on the south and west by adjoining tracts. Thus it was located on the southwest corner of the ramp and McKnight Road, and had a large expanse of rolling, landscaped ground to the south and west. In general, the changes made by plaintiff in the immediate vicinity of defendants' property consisted of widening Route 40; building a new ramp, on a higher grade than the old; widening McKnight Road; and constructing a reversed "S" outer roadway 30 feet wide through defendants' lot, starting at the southwest corner thereof and emerging on McKnight Road at about the middle of the south property line. Three separate portions of defendants' land were taken, totalling .21 of an acre, and a triangular piece of ground of .19 of an acre was separated from the rest by the newly built outer roadway. Plaintiff deeded to defendants an area of .16 of an acre on the north, and defendants eventually sold the separated parcel of .19 of an acre to a neighbor for $600. Plaintiff also condemned temporary construction easements 10 feet wide on either side of the outer roadway and as much as 30 feet wide along part of the east property line, for the use of construction machinery and equipment. As a result of the changes made defendants' property is now an island, surrounded on all four sides by roadways.

Plaintiff asserts that the court erred in the admission of certain evidence, in the giving of Instruction No. 3, and that the verdict of the jury is excessive.

Defendants called as their witness one Stuart M. Mertz, and qualified him as a professional landscape architect. Mertz testified that he had examined plaintiff's property before work began, as well as afterwards, and was familiar with the trees and shrubs located on the land appropriated. He was asked by defendants' counsel whether he had an opinion as to the reasonable market value of such trees and shrubs, and after he replied that he did, was asked to state it. Plaintiff objected on the ground that the market value of the trees and shrubs could only be reflected in the total value of the property before and after the taking and could not be evaluated independently of the entire property. The court overruled the objection and Mertz then gave his opinion of the reasonable market value of the various trees and shrubs. Plaintiff contends that the court erred in admitting such evidence, " * * * for the reason that growing trees and shrubs cannot be valued separately and apart from the land upon which they grow." This assignment overlooks the distinction between the award by the jury and the evidence which may be introduced for the jury's consideration in making the award. Of course, the jury may not return separate awards for land, for the improvements thereon, for fixtures, or for other elements which may enter into the overall value of the realty. But where it is established that the land was enhanced in value by reason of the addition thereon of buildings, fixtures and other improvements, evidence of the separate value of the land and such additions is admissible. State of Mo. ex rel. State Highway Commission of Missouri v. Dockery, Mo., 300 S.W.2d 444; City of St. Louis v. Turner, 331 Mo. 834, 55 S.W.2d 942; City of St. Louis v. Rossi, 333 Mo. 1092, 64 S.W.2d 600. There is no logical reason why the same principle should not apply to trees and shrubs which are shown, as in this case, to have enhanced the value of residential property, and the authorities hold that such evidence is admissible. 4 Nichols on Eminent Domain, 3rd Ed., Sec. 13.21, pp. 406, 407; 2 Lewis On Eminent Domain, 3rd Ed., Sec.

724, p. 1267; 29 C.J.S. Eminent Domain § 173, p. 1042; 18 Amer.Jur., Eminent Domain, Sec. 343, p. 986.

■ Over plaintiff's objections defendant Keller was permitted to state that there was traffic on the newly constructed outer roadway, of service trucks and people who live in the adjoining subdivision, which was constant day and night; that the lights of vehicles using the road swung across the west end of his house containing the bedrooms, as they made the curve, and that at times there was a tremendous amount of noise, and at odd hours, such as emergency brakes, sirens, trucks, and "hot-rod" automobiles. Witness Mertz was also permitted to testify that one of the reasons for his recommendations that a stone wall be built along the outer roadway and that shrubs be planted along the top, was to obtain privacy and screen out the traffic. Plaintiff contends that the evidence as to traffic, noise and car lights "are items of general damage shared by the entire public and were not shown to be special damages to the Respondent"; and that it was therefore prejudicial error to admit such evidence. If the noise of heavy traffic on a highway constructed through residential property, within 35 feet of the owner's home, where none existed before, diminishes the value of the portion of the land not taken by the condemnation; and if it is the law that " * * * anything which is directly injurious to such capability or special adaptation for a particular use, and thereby affects the market value of the property, is therefore competent to be shown as a legitimate factor in bringing about the total damage sustained for which it is contemplated that the owner shall receive just compensation," City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 168 S.W.2d 149, 153, quoted with approval in State ex rel. State Highway Commission v. Bruening, Mo., 326 S.W.2d 305, then it would seem that such evidence should be admissible. But in State Highway Commission, State ex rel. v. Turk, Mo., 366 S.W.2d 420, 421, it was held that the amount of noise on the highway is not a proper element to be taken into consideration in arriving at the damage resulting from the condemnation of land for State highway uses. We must therefore agree with plaintiff that the court erred in admitting evidence as to the factors of traffic and noise on the outer roadway. However, by Instruction No. 4, given at the request of the plaintiff, the court instructed the jury that it should not consider the amount of increased traffic or the noise resulting therefrom as elements of damage reducing the reasonable market value of the defendants' remaining property. We are of the opinion that by this instruction the court effectively removed whatever prejudice may have resulted from the erroneous admission of the evidence as to traffic and noise. As to the headlights which shone into defendants' bedrooms, we cannot agree that this was an item "of general damage shared by the entire public * * *." Presumably plaintiff did not so consider it at the time of trial, for it did not include the item of lights with those of traffic and noise in its Instruction No. 4. Furthermore, the evidence was that the outer roadway approached the defendants' house on a downgrade and on a curve, and so far as shown on the plats introduced in evidence it was the only house in this section of the improvement which was so situated, and the only house which would be subjected to the glare of headlights. It cannot be said, therefore, that this was an item of general damage which was " * * * common to the other land owners in the neighborhood * * *" Chicago, Great Western Railroad Co. v. Kemper, 256 Mo. 279, 296, 166 S.W. 291, 295.

■ In the course of presenting their case the defendants were permitted to introduce evidence that after the completion of the changes made by plaintiff they expended the sum of $4100 to build a retaining wall, plant various trees and shrubs, and other items, all in an effort to restore their property to its highest adaptable use as a residence. At the close of the case and

at the request of defendants the court gave Instructions Nos. 1, 2 and 3. The latter read:

"The jury is instructed that in determining the fair market value of the remainder of defendants' property immediately after the appropriation of the property taken by plaintiff on August 23, 1960 (and including in such remainder the adjoining tract deeded to defendants by the State of Missouri), you should take into consideration all the facts in evidence relating to the condition of the said remainder which would naturally impress a reasonably prudent buyer in negotiating for the purchase of said remainder, including: (1) The destruction of trees on the land. (2) Its separation into two tracts by the roadway. (3) *The effects of the position and proximity of the roadway to the house; in this connection, if you find those effects to have been such as to make necessary relandscaping in order to minimize or overcome them, so as to restore as nearly as possible the said remainder of defendants' property to a condition of its most advantageous previously available use, then you may take into consideration the reasonable cost and expense of such relandscaping, including planting of trees, moving of fences, construction of a retaining wall and removal and relocation of air conditioning equipment.* (4) The use of the temporary construction easements on defendants' property; in this connection you may consider all the facts and circumstances in evidence concerning such use and the damages which, at the time of the taking, could reasonably have been expected to follow and which would naturally impress a reasonably prudent buyer in negotiating for the purchase of said remainder of defendants' property."

Plaintiff asserts that the apparent basis for the italicized portion of the foregoing instruction is the statement in State ex rel. State Highway Commission v. Bruening, Mo., 326 S.W.2d 305, 311, that where evidence of restoration costs is introduced " * * * A proper instruction so as to avoid any question of double damages, such as Instruction No. 3 given for plaintiff in Smith v. Kansas City, 128 Mo. 23, 30 S.W. 314, could have been given, and on retrial should be given." Seizing upon the words, " * * * such as Instruction No. 3 given for plaintiff in Smith v. Kansas, * * *" plaintiff contends that defendants' Instruction No. 3 is dissimilar to Instruction No. 3 in the Smith case, and therefore erroneous, in that it does not contain any limitation on the amount of damages which the jury might award.

An examination of Instruction No. 3 in Smith reveals that it contained no words or figures of limitation. As plaintiff recognizes the limitation " * * * not to exceed five thousand dollars ($5,000.00) * * *" appear in Instruction No. 2 given in Smith. To understand why they may have been necessary there, and not in the instant case, requires a review of the issues and evidence present in that case. The action in Smith was to recover damages for the lowering of the grade of the street on which plaintiffs' property abutted. The plaintiffs alleged in their petition that they had been damaged in the sum of $5,000. Their evidence was that to lower the grade of their lot and let down the improvements thereon, so as to restore the premises to the same relative height above the street as that which existed before the cut was made, would cost from $4,000 to $6,000; and that the fair market value of their property had been depreciated from $3500 to $5,000. Plaintiffs offered, and the court gave, four instructions. By No. 1 the jury was required to find that the market value of the property had been depreciated by the grading. By No. 2 it was told that if it found for plaintiffs its verdict should be for such sum, not to exceed $5,000, as it might find from the evidence would equal the amount that the market value of the

property had been diminished by the act of the city. Instruction No. 3 read:

> " 'If the jury find for the plaintiffs, in estimating the damages to said property they may take into consideration as elements of damage, with other evidence in the case, the cost, if any, necessary to grade down said property to the grade as changed by defendant, and lowering and replacing the improvements thereon, and the necessary destruction of any trees or shrubs that you may find and believe to be on said property, also of the cost, if any, of building retaining walls, if you find it necessary or proper that any be built, allowing, however, as an offset, any appreciation or increase in value of said property by reason of the grading of said street.' "

And the term "market value" was defined by plaintiffs' Instruction No. 5. The defendant in that case complained that Instruction No. 3 permitted the jury, in estimating plaintiffs' damages, to take into consideration, with the other evidence in the case, the cost of adjusting plaintiffs' premises to the condition of the street created by defendant's act. In rejecting the attack the court said:

> " * * * The general rule is, that when the reasonable cost of repairing the injury by restoring the premises to their former condition, as near as may be, is less than the diminution in the market value of the property by reason of the injury, such cost of restoration is the proper measure of damages. On the other hand, when the cost of restoring is more than such diminution, the latter is generally the true measure of damages, and proof of the cost of restoring the land to its former condition, and proof of the diminution in the market value are both admissible on the question of damages to be awarded for an injury thereto. * * * "

The factual differences in the two cases are both numerous and obvious. In Smith, plaintiffs in their petition prayed for a recovery of only $5,000; so far as the record before us shows, the defendants in the instant case did not by any pleading so limit the amount they sought to recover. Of even greater importance, under the plaintiffs' evidence in Smith, the jury might have found that the cost of restoration, $6,000, was greater than the diminution of $5,000 in the value of their property; in the case at bar, defendants' evidence was that the cost of partial restoration, $4,100, was far less than the depreciation of $20,100 in the fair market value of their property. Thus no words of limitation in the amount of the award were needed in the instant case for there was no possibility, as there was in Smith, that the jury might return a verdict in an amount greater than the diminution in the value of defendants' premises.

■ Plaintiff also contends that the jury might have concluded from Instruction No. 3 that double damages could be awarded defendants, that is, the amount of depreciation plus the cost of partial restoration. This argument ignores both the text and the pattern of defendants' instructions. By Instruction No. 1 the jury was plainly told that " * * * the damages due defendants is the difference between the fair market value of defendants' property immediately before and immediately after the appropriation of the property taken by plaintiff * * *." By Instruction No. 2 the jury was informed that in determining the fair market value of the property immediately *before* the appropriation it should take into consideration all the facts in evidence " * * * which would naturally impress a reasonably prudent buyer in negotiating for its purchase, including: The location of the property; * * * " and other specified factors. It is apparent that Instruction No. 3 followed the same pattern as that of Instruction No. 2, except that it related to the fair market value of the

property immediately *after* the appropriation, and to those factors which would impress a reasonably prudent buyer in negotiating for the purchase of the property, including, among other factors, the cost of partial restoration. Furthermore, by defendants' Instruction No. 4 the jury was again told that in determining defendants' damages, " * * * you will find the fair reasonable market value of the whole of defendants' land as it stood on the date of appropriation August 23, 1960, and then you will find the fair reasonable market value of the portion of the defendants' land remaining in its then condition after the appropriation, including the triangular parcel of land deeded by the State Highway Commission to the defendants on September 27, 1960, and the difference, if any, will be the damages sustained by the defendants in this proceeding. * * *" Thus by Instruction No. 3 the jury was clearly told that it could consider the cost of restoration only as it might affect the after market value in the eyes of a prudent buyer. And in equally plain and unmistakable language the jury was told in the other instructions, for both plaintiff and defendant, that the defendants' right of recovery was limited to the difference in fair market value immediately before and immediately after the appropriation. As the court said in Smith v. Kansas City, supra, 128 Mo. p. 32, 30 S.W. p. 316:

> "Reading the instructions altogether, as they should be read, the fact that plaintiffs' recovery is to be limited to the amount of the depreciation in the market value of the property by the injury complained of is found to be made unusually prominent by frequent reiteration, in plain and unmistakable language; and, when so read, instruction No. 3 for plaintiffs is found to be entirely consistent with that idea, and harmonious with all the other instructions in the case."

Plaintiff's final criticism of Instruction No. 3 is that the part regarding restoration costs " * * * was contrary to the evidence due to the fact that there was no testimony relating or in any fashion connecting the cost of restoration to the *after value* of the Respondents' property. * *" There is no reason why such evidence was necessary. State ex rel. State Highway Commission v. Bruening, Mo., 326 S.W.2d 305, 311(6). As the court said in Smith v. Kansas City, supra, 128 Mo. p. 31, 30 S. W. p. 316:

> "Such evidence is admissible, not only for the purpose of disclosing the true measure of damages, but when, as in this case, the measure disclosed is the market value of the property before and after the change of grade, to enable the jury, by a knowledge of the real situation and condition of the premises, and the expenditure necessary to make them conform to the new grade, to form a better idea of the effect of the change on its market value. Such information throws light upon, and to an intelligent jury of the vicinage is invaluable in testing the worth of expert opinion as to, such market value."

■ The concluding point in plaintiff's brief is that the verdict of $16,000 " * * * could only be the result of passion and prejudice on the part of the jury based upon other erroneous matters heretofore stated in this appeal" and is excessive. As we have held, there were no other erroneous matters and " * * * nothing is added here that causes us to change our conclusion * * *." Jackson County v. Meyer, Mo., 356 S.W.2d 893, 899. Nor were there any incidents during the course of the trial, as was claimed in that case, which might have prejudiced the plaintiff in the eyes of the jury. In fact, counsel on both sides, as well as the court, are to be complimented on the highly professional manner in which the case was tried.

In connection with its claim of excessiveness plaintiff points out that the commissioners appointed by the court awarded de-

fendants damages of only $10,000, and cites State ex rel. State Highway Commission v. Wright, Mo., 312 S.W.2d 70 as authority for its claim that we may consider such fact in determining whether or not this case should be retried or whether a remittitur would meet the ends of justice. Such a determination, of course, begs the initial and basic question of whether the verdict was excessive. Two expert witnesses, Barngrove and Alt, testified on behalf of defendants and two, Scott and Hallauer, on behalf of plaintiff. Barngrove's before value was $55,000, Alt's $57,600, Scott's $39,700 and Hallauer's $39,500. Barngrove's after value was $35,000, Alt's $37,500, Scott's $36,030, and Hallauer's $37,150. Thus the diminution in value as found by each was Barngrove $20,000, Alt $20,100, Scott $3670, and Hallauer $2350. It is of interest to note that the difference in the opinions of the two sets of experts related to the variation in their before values, for all of their after values are relatively close; and to note, also, that defendant Keller's unchallenged testimony was that he had paid $46,287 for the property in August 1956, and had thereafter expended $4500 in adding air conditioning and other improvements prior to the appropriation by plaintiff. In any event, the jury's award of damages was supported by substantial evidence and we have no valid reason to interfere with it. Jackson County v. Meyer, supra; City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839; Taney County v. Addington, Mo., 304 S.W.2d 842.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court. Accordingly, judgment is affirmed.

RUDDY, P. J., WOLFE, J., and FRANK W. HAYES, Special Judge, concur.