STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Mis-
souri, Appellant,

v.

Lena GALEENER et al., Exceptions of Laura
Riley LaValle, et al., Respondents.

No. 51190.

Supreme Court of Missouri,
Division No. 2.

April 11, 1966.

Motion for Rehearing or to Transfer to
Court En Banc Denied May 9, 1966.

Robert L. Hyder, Chief Counsel, Missouri State Highway Commission, Raymond S. Roberts, Farmington, George Q. Dawes, Sikeston, for appellant.

Ward & Reeves, Caruthersville, for respondents.

BARRETT, Commissioner.

This condemnation proceeding was necessitated by the relocation and construction of 8.646 miles of U. S. Highway 60, with limited access, from Morehouse northeasterly intersecting Highway 61 southeast of and adjacent to the City of Sikeston. A jury has awarded the landowners, the La-Valles, $130,000 damages and the State Highway Commission has appealed. The state's witnesses placed the damages at $28,000, $49,000 or $57,750, and thus, since it is tacitly conceded that the landowners are entitled as a minimum to one of these sums, the amount in dispute exceeds $15,-000 (Const.Mo.1945, Art. 5, Sec. 3, V.A.M.S.; RSMo 1959 Supp. § 477.040) and jurisdiction of the appeal is appropriately in this court. Public Water Supply Dist. No. 2 v. Alex Bascom Co., Mo., 370 S.W.2d 281; State ex rel. State Highway Comm. v. Stotko, Mo.App., 365 S.W.2d 64; State ex rel. State Highway Comm. v. King Bros. Motel, Inc., Mo.App., 388 S.W.2d 522.

One of the appellant's assignments of error relates to a problem more or less collateral to the main subject and may be conveniently disposed of preliminarily. While the LaValle property is just outside the city limits of Sikeston, the property, the damages, values and benefits, and the case itself are all necessarily inseparable in many respects from the city and its immediacy. And a former manager of the Sikeston Chamber of Commerce, with unconcealed pride, testified at length to the city's growth, the number of schools, churches, subdivisions, new homes, telephones, to new and expanding industries, and finally to the population of Sikeston and the adjacent village of Miner. He estimated the population of Sikeston in 1950 at 10,000, in 1960 at 13,752 (the date of the taking was October 9, 1958), and as of the date of the trial, September 1964, at 15,000. He estimated the population of Miner in 1955 at 1000 and in 1964 at 1500 to 2000. (Judicially noticing for the purposes of this appeal (State ex rel. Dickason v. County Court, 128 Mo. 427, 30 S.W. 103, 31 S.W. 23) the United States Census of Population for 1960 shows the population of Sikeston in 1950 as 11,640 and in 1960 as 13,765. There was no population figure for Miner in 1950 and in 1960 it was 548.) The state's assignment of error is that the court erred in thus permitting the introduction of parol evidence of the population of Sikeston and Miner because it violated the best evidence rule, was based on guess and speculation and "not upon the census reports as published by the United States Census Bureau." In the trial of the case when given an opportunity to examine the witness "fully before he answers" counsel said, "No, your honor, I am standing on the objection, the only record admissible in this court is the United States Federal Census."

There is a temptation to pursue this assignment of error and consider the distinction in judicial notice and the admissibility of census reports as evidence (5 Wigmore, Evidence, § 1671(7), p. 685, 9 Wigmore, §§ 2577, 2580) but it is not necessary to a disposition of this point. In the

first place, as the respondents suggest, the best evidence rule has no application to the proof of facts collateral to the main issue (32A C.J.S. Evidence § 781, p. 100) and of course the population of these localities was a collateral issue. Neither is it necessary to say whether the federal census reports are conclusive, as in effect the appellant contends. They may be conclusive "for the purpose of representation" and "the ascertainment of the salary" in political subdivisions. RSMo 1959, § 1.100. And while courts may "take judicial notice, without proof" of the population of cities, the statute does not refer to the federal census alone, it says "according to the last enumeration of the inhabitants thereof, state, federal or municipal, made under or pursuant to any law of this state or of the United States." RSMo 1959, § 490.700. Further indicating that the federal census is not the only possible, in the language of appellant, "record admissible in this court" is the fact that cities, if their governing bodies are of the opinion that there has been a substantial change in population since the last census, may "request the governor to order a special census to be taken therein." RSMo 1959, § 71.160. And finally, while it is not known whether the jury noted the detail, two of the landowners' exhibits were general highway maps of Scott and New Madrid Counties which, according to the legends on the exhibits, were prepared by the appellant and sold by it for "10 cents." These maps bear dates of "12–1–58" and "2–2–59" and they show the population of that part of Sikeston in Scott County as 11,629, 11 in New Madrid County, total 11,640. These maps also show that Sikeston and Miner are all but one, and the population of the latter is stated to be 50. In view of all these considerations the court did not prejudicially err in permitting the introduction of parol evidence of the population of these two municipalities.

Not only is the land involved here adjacent to both Sikeston and Miner, U. S. Highway 61 adjoins its east end and Highways 60 and 61 intersect at its northeast corner. And off the northeast quadrant of the highway intersection there is a new Holiday Inn and north-south Interstate Highway 55 is less than three miles to the east. Originally the LaValle property, farm land intensively cultivated, consisted of 288.83 acres. While 248 acres of the contiguous tract were rectangular in shape, it laid northwest-southeast and the other 40-acre tract was attached to the southwest corner but it too was tilted, so to speak, so that its northwest corner of 5 acres was in almost a straight line with the larger 248 acres and was therefore intersected by the highway. One other important fact should be noted and that is that the 248 acres were intersected from north to south, almost in the center of the tract, by the Frisco Railroad. Thus east of the railroad there were 113.24 acres and west of the railroad, in the rectangular tract, 134.76 acres. And thus while the 288.83 acres were contiguous the railroad tracks divided the land into two separate areas. The lay of the land and the shape of the tracts before and after the taking, along with its proximity to Sikeston, are of the greatest importance in this particular case.

The state has condemned a strip 8700 feet long, about one and one-half miles, 270 to 290 feet wide, through the center of the 248-acre tract and across the northwest corner of the 40 acres—taking for the highway right-of-way alone 44.83 acres. This location of the highway takes 18.04 acres out of the east 113.24 acres, 23.09 acres out of the west 134.76 acres, and 3.70 acres out of the northwest corner of the attached 40 acres. In addition, north of the highway and out of the 113.24-acre tract 10.20 acres were taken for a borrow pit, while west of the railroad and south of the highway in the other larger tract two separate areas, one of 4.12 acres and the other of 3.99 acres, were also taken for borrow pits. Two of these are temporary takings and are to be returned to the landowners but the topsoil in depths of one to twenty feet has been removed and some of

the witnesses gave little or no value to these pieces of property. Across the railroad tracks the state has built an overpass and this fact is concerned with its separate assignment of error and is mentioned here only for its obvious general effect on the tract as a whole. The construction of the overpass and its approaches necessitated the acquisition of the 18.31 acres of borrow pits.

The effect of the highway and the borrow pits is that instead of being divided into two tracts by the railroad, the LaValle property is now divided into at least eight distinct and more or less separated pieces varying in size from 85 acres to 0.16 acres. As stated, this is a limited access highway, Highway 61 abuts the 85 acres on the east end, there is no other highway or road entrance to the land except that, as described by the engineer who designed the highway, as to the southwest 37.2 acres and the area south and west of the railroad and highway, "(t)here is left along the south property line of that tract of land a strip of ground 35 feet wide and the owner can travel along this area down through here and enter into this remaining 37.2 acres." There is of course no access to the 0.16 of an acre in the northwest tip of the 40 acres and in the area west of the overpass the owner has been given a crossover from the 47.2 acres to the south 17.5 acres and the borrow pit of 4.12 acres and the fact of the crossover is connected with the separate assignment of error relating to the overpass. This is sufficient general background for the other five assignments of error, all of which are concerned with the size of the verdict, instructions and the introduction of evidence upon the principal issue of the damages recoverable.

■■■ The first and one of the most vigorously asserted assignments is that the court erred in permitting the landowners "to introduce evidence relative to traffic hazards at Respondents' crossing, and particularly hazards involving violations of the speed laws, because this testimony con-templated the commission of future tortious conduct by third parties and hazards shared in common with all members of the public due to the use of the highway." It may be said, to shorten consideration of the problem, that noise and speed, increased traffic and their resulting inconveniences are neither elements of damages nor of benefits and they are not proper matters of proof or for the jury's consideration. State ex rel. State Highway Comm. v. Turk, Mo., 366 S.W.2d 420; State ex rel. State Highway Commission v. Sharp, Mo.App., 62 S.W.2d 928; State ex rel. State Highway Commission v. Pope, 228 Mo.App. 888, 74 S.W.2d 265. But, even though inconvenience, here of carrying on farming operations or other business, is not an element for which the landowner may be compensated, it may with other factors affect future use and therefore market value, as for illustration that borrow pits were dug near a gate and interfered with pasturing of cattle. State ex rel. Highway Comm. v. Malone, Mo.App., 45 S.W.2d 84. Then too when a part only of a tract is taken the owner is entitled to recover for the land actually taken and in addition "whatever consequential damages may proximately result to the remainder by reason of the taking of a part." And "(t)hat includes damages resulting from any destruction, restriction, diminution, or interruption of rights of ownership in and to the property." State ex rel. N.W. Elec. Power Co-op., Inc. v. Waggoner, Mo.App., 319 S.W.2d 930, 934; 29A C.J.S. Eminent Domain § 111, p. 450, § 163, p. 707. And it was in this latter connection that the landowners injected this type of testimony into the trial, particularly during their examination of the engineer who designed this highway.

While the engineer was employed by the State Highway Department the landowners called him as a witness and it was he who gave the precise dimensions of the areas taken for one purpose or another, described the highway and the areas remaining and important here, the highway overpass, the fills necessary for its approaches and the

crossing over the highway given the landowners in the area west of the railroad. It is not necessary to describe the railroad overpass and the fills necessary for its approaches, the overpass is 28 feet "above the natural ground surrounding it." The crossing allotted to the landowners over the highway right-of-way, 290 feet wide in this area, "is approximately 1400 feet from the crossing to the top of the bridge over the railroad." The engineer thought the landowners' crossing adequate and safe from oncoming traffic whether the landowners were operating farm machinery across the highway or whatever use they were making of it. At this point landowners' counsel asked the witness whether it was not common on these "super-duper four lane highways" for vehicles to travel at speeds of 70, 80, 85 or 90 miles an hour. The engineer said that he had seen people pass him when he was going 70 miles an hour. He testified that at 70 miles an hour an automobile would travel the 1400 feet in 13 seconds and at 80 miles an hour in 9 seconds. It was his estimate that it would take farm equipment traveling at five miles an hour 33 seconds to cross the 290 foot right-of-way. The court sustained an objection to the question whether these distances and speeds created a "situation that is a hazard."

■ Why counsel would insist on inquiries relating to illegal speeds (State ex rel. Northwest Electric P. C. Inc. v. Waggoner, Mo.App., 319 S.W.2d 930) is not known, but as indicated in approaching this assignment of error, it is assumed that in ordinary circumstances all testimony as to speed, noise and the inconvenience of traffic is inadmissible because "at the point in question (it) is shared by all who reside in the neighborhood." State ex rel. State Highway Comm. v. Turk, 366 S.W.2d 1. c. 422. But as indicated and as is plain from the questions and their context, this evidence was not introduced for the purposes condemned in the Turk, Waggoner, Pope and Sharp cases. It was introduced for the purposes set forth in the Clevenger case:

"But we further hold that evidence of the manner, nature and extent of the taking, the separation of defendants' land into different tracts, and the added inconvenience, if any, in going about the farm, may properly be considered by the jury in assessing the total net damages to the land, together with any other similar circumstances." State ex rel. State Highway Comm. v. Clevenger, Mo., 291 S.W.2d 57, 62. There was no request to limit the purposes of this particular evidence and there were no withdrawal or delimiting instructions, it was simply objected that in any event the evidence was inadmissible for any purpose and was therefore prejudicial. But in the context in which it was introduced and in the circumstances of this particular case the evidence was not manifestly and prejudicially erroneous so as to demand the granting of a new trial by this court. State ex rel. Northwest Electric P. C. Inc. v. Waggoner, supra; State v. Clevenger, supra; 29A C.J.S. Eminent Domain § 163, p. 705.

■ Another assignment of error relating to proof is that the court erred in permitting respondents to introduce "evidence of sales by lot located within the corporate limits of Sikeston, because the sale by lot of subdivided land, improved with utilities would not tend to aid the jury in determining market value of unimproved land lying one-half a mile from utilities." In the argument section of its brief it turns out the appellant again refers to the testimony of Mr. Beaird the former director of the Sikeston Chamber of Commerce and for the past four years manager of the Security Federal Savings & Loan Association in Sikeston. In addition to the growth of Sikeston, its subdivisions and dwellings, Mr. Beaird testified, without objection, that on behalf of the First Baptist Church he hand handled the purchase of a piece of property in the city, about 6 acres, for $30,800, about $5000 an acre. On redirect examination he testified that in the E. C. Robinson Lumber Company Addition lots 100 to 125 feet by 60 to 75 feet sold for an average of $2000 a lot. The only author-

ity cited in support of the assignment is State ex rel. State Highway Comm. v. Klipsch, Mo., 392 S.W.2d 287, but that case was not concerned with the objection made here; insofar as it is applicable it recognizes the general rule that in considering the admissibility of evidence of other sales considerable deference is due the trial court's discretion. The judgment in that case was reversed because there was a flagrant violation of the rule "that a witness may not testify as to his opinion of the value of comparable land." (392 S.W.2d l. c. 290–291). And it may be conceded as a general proposition that "(s)ales of small residence or business lots on improved streets would give the jury no assistance in estimating the value of a tract of 24 acres of unimproved land." St. Louis, O. H. & C. Ry. Co. v. Fowler, 142 Mo. 670, 678, 44 S.W. 771, 773; Annotation 85 A.L.R.2d 110, 140. And of course there were no utilities or sewers connected with the LaValle property, but, according to the landowners' witnesses, the highest and best use of the property was for purposes of subdivision, both residential and commercial. "The importance of other sales depends not only on their proximity in point of time but also upon 'similarity in location, and in *the uses to which the properties may be adaptable.*'" City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839, 850. Here the fact was testified to by a single witness out of eight or ten who testified to values and damages and, if not comparable property, the value of improved lots was again a collateral matter. City of St. Louis v. Kisling, Mo., 318 S.W.2d 221, 226. And, in conclusion, to borrow further from the Vasquez case: "The differences (in acreage, immediate accessibility to a paved road, etc.) were not so disparate as to make them incomparable as a matter of law. The decision to admit the evidence of these other sales was made in the reasonable exercise of the discretion of the trial judge, and no abuse of discretion is indicated." (341 S.W.2d l. c. 851.)

■ Another assignment of error concerned with the trial of the case is that the court erred "in not reprimanding counsel and for not declaring a mistrial of the case, when respondents' counsel on five or six occasions stated and elicited from witnesses that the Matthews and Stallcup land could not be bought at any price." The assignment is considerably weakened by this statement in its brief which obviously does not demonstrate manifest prejudicial error: "The full impact of these statements are difficult to visualize because the Court Reporter neglected to transcribe the oral statement and arguments. *While this matter standing alone is not felt to be reversible error,* Relator contends that this added to other erroneous matters in this case contributed substantially to the excessiveness of the verdict." (Emphasis supplied.) Of course this court may not consider any matters not set forth in the approved transcript. State ex rel. State Highway Comm. v. Parker, Mo., 388 S.W.2d 830, 832. In its assignment of error the appellant concedes that "the court sustained relator's objections thereto," and in contending that nevertheless there was prejudicial error the appellant cites no authorities (Civil Rule 83.05(a), V.A.M.R.) and the consequence is that there is no demonstration of manifest error. Royal v. Thompson, Mo., 212 S.W.2d 921, 922; Morris v. Willis, Mo., 338 S.W.2d 777.

■ In its assignments of error the appellant has commingled objections to Instructions 1 and 2 even though there were no specific objections to Instruction 2 when it was offered, the transcript recites only that "To the action of the Court in giving said instructions, counsel for Plaintiff, at the time, objected," and the instruction is not mentioned in the motion for a new trial. Civil Rules 70.02, 79.01, 79.03. Thus any error in Instruction 2 was not called to the trial court's attention and the consequence is that the mere assignment in its brief of errors with respect to that instruction presents no reviewable question to this court. Arnold v. Fisher, Mo.App., 359 S.W.2d 602, 609–610. Incidentally, the appellant requested no instructions and, in effect there were only two

given (number 3 was concerned with the number of jurors required to return a verdict), and number 2 was concerned only with the measure of damages.

It is not necessary to set it forth in detail here but Instruction 1 was the principal instruction and covered the subject of eminent domain, this particular property and a rather full exposition of "fair market value." As stated, the appellant commingles its objections and for the most part the objection is to Instruction 2 and the measure of damages. As to Instruction 1 it is said that the part "directing the jury in what it should consider in arriving at fair market value is misleading to the jury under the evidence in this case and would cause the jury to compare this property with recent sales of land of a completely different nature." It is also asserted that the instruction in effect precluded consideration of "evidence of special benefits to this property as commercial property." In part these contentions were disposed of in considering the prejudicial effect of certain evidence and, as stated, the appellant offered no instruction on the subject of special benefits.

■ But it is not necessary to pursue the objections to Instruction 1 in detail, the appellant all but admits that Instruction 1 was approved by this court in City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839. This is the appellant's statement in its brief: "It should be pointed out at the outset that an instruction very similar to the instant one, but containing significant differences, as hereafter noted, was approved by this Court in City of St. Louis v. Vasquez, 341 S.W.2d 839. Also, the instruction in the Vasquez case was approved because of the existence of evidence in that case which was significantly different from that in the instant case." And needless to say there were numerous factual differences in this and the Vasquez case but the factual differences are not sufficiently significant to change the essentials or to distinguish the principles announced in the

Vasquez case. Not only was an almost identical instruction approved in that case, with minor adaptations it has been approved in Missouri Edison Company v. Gamm, Mo.App., 379 S.W.2d 166; State ex rel. Board of Regents for Central Mo. State College v. Moriarity, Mo.App., 361 S.W.2d 133, and most recently, State ex rel. State Highway Comm. v. Koberna, Mo., 396 S.W.2d 654. While there are factual differences in the cases virtually every objection made here was made in the Vasquez case or those following it and it would serve no useful purpose here to examine the argument in detail and point out the distinctions necessary to demonstrate that Instruction 1 was not prejudicially erroneous for the reasons advanced upon this appeal.

■ The final assignment is that the verdict is excessive, "exceeding even the damages testified to by many of respondents' own witnesses, is unsupported by the evidence in the case and is the result of bias, prejudice and the cumulative effect of the numerous errors committed in the trial." In support of this rather sweeping assignment the appellant cites the single case of Mississippi River Fuel Corporation v. Whitener, Mo.App., 237 S.W.2d 239. And that case was not concerned with the excessiveness of a verdict in a condemnation proceeding and neither was it concerned with bias and prejudice entering into a verdict or with so-called cumulative error. There was error in two respects in that case; one, in permitting testimony as to the cost of digging a new well but the crux of the case is contained in this quotation, which is not applicable to this case: "No evidence was introduced from which the damage to the land actually owned by respondents could be reasonably ascertained. It follows that the verdict of the jury finds no support in the evidence." There was no doubt here whether there was damage to land "actually owned by respondents," as indicated in considering this court's jurisdiction of the appeal, the appellant admits damages of at least $28,000 and as much as $57,750. Two or three of the

respondents' seven or eight witnesses on values and damages estimated the damages as low as $117,893, $122,500 and $122,306.75. For the most part these witnesses treated the tract as farm land only while most of the witnesses were of the opinion that its highest and best use was for both residential and commercial subdivisions. It is not necessary to encumber this opinion with the qualifications of the various witnesses and set forth in detail the factors that entered into their opinions but five of the respondents' witnesses were of the opinion that the land was damaged in these sums, all in excess of the $130,000 verdict: $150,032; $164,124; $143,550; $150,000 and $137,608.25. "There was disparity between the estimates of the expert witnesses, but that is not a justifiable basis for an appellate court to disturb the verdict in a condemnation case. * * * There was substantial evidence from plaintiff's expert witnesses that the total of appellant's damages resulting from the appropriation was less than the award. (The landowner appealed claiming that a $22,000 award was inadequate.) * * * The trial court is vested with wide discretion in ordering a new trial on the ground of either excessiveness or inadequacy of the verdict, and its action will not be disturbed if it is reasonably supported by substantial evidence. * * * We conclude that the verdict in this case was supported by substantial evidence, that appellant has not demonstrated bias or prejudice on the part of the jury, * * *." State ex rel. State Highway Comm. v. Koberna, 396 S.W.2d l. c. 668; Public Water Supply District No. 2 v. Alex Bascom Co., Mo., 370 S.W.2d 281, 290.

In accordance with these views the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.