STATE of Missouri ex rel. STATE
HIGHWAY COMMISSION of
Missouri, Appellant,

v.

FRANCHISE REALTY INTERSTATE
CORP. et al., Respondents.

No. 29770.

Missouri Court of Appeals,
Western District.

Feb. 26, 1979.

Bruce A. Ring, Chief Counsel, Jefferson City, Earl H. Schrader, Jr., Darold W. Jenkins, Terry P. Thompson, Asst. Counsel, Mo. State Highway Commission, Kansas City, for appellant.

Stanley I. Dale, Dale, Flynn, Bauman & Liles, St. Joseph, Wm. G. McCaffree, Nevada, for respondents.

Before HIGGINS, Special Judge, Presiding, PRITCHARD, J., and ROBERT R. WELBORN, Special Judge.

ROBERT R. WELBORN, Special Judge.

Proceeding in condemnation for highway purposes. Landowners Roger Knapp and Joan A. Knapp excepted to commissioners' award and jury fixed their damages at $15,500.00. Condemnor Missouri State Highway Commission appeals.

In this court issues involve the propriety of considering "spatter" damages in post-taking valuation of respondents' property and refusal of trial court to give withdrawal instruction on cost of removal of improvements on the property.

The highway project resulting in this action was the widening of U.S. Route 169, known as the "Belt Highway" on the east side of St. Joseph. In the area here involved, the roadway was to be widened from four 10′ travel lanes to four 12′ lanes with a 14′ center turn lane. The Knapps owned a tract of land on the east side of the highway between Seneca and Penn Streets. As of the date of taking, May 12, 1976, the Knapp lot had an 82.5′ frontage on Route 169 and a depth of approximately 96 feet. There was a building on the lot in which the Knapps conducted a hearing aid business, a sewing machine business and a lawnmower repair business. The hearing aid business was the principal operation. The building had been adapted for that use by the sound-proofing of rooms used to test hearing aids by extra insulation, sound deadening wall boards and sound deadening floor covering and windows. Customers entered the building through two doors in the front, facing Route 169. Prior to the taking the front of the building was 30.8 feet from the traveled portion of the highway and 15.8 feet from the highway right of way.

The taking here involved a strip on the front of the lot five feet in width along the east edge. Upon completion of the project the building would be 19.8 feet from the traveled portion of the highway and 10.8 feet from the highway right of way. A sidewalk running along the front of the building and providing access to its entrances was 23 feet from the roadway before the taking. Its post-taking locating was 12 feet from the roadway.

As of the date of taking, the building did not conform to St. Joseph zoning ordinance setback requirements. Because of its non-conforming location, which would continue after the taking, no structural alterations or additions could be made to the building unless a variance could be obtained.

At the trial, a Highway Commission witness testified that the before taking value of the property was $28,600 and the after taking value $26,025 or $2,575 damages. The landowners called as a witness one of the condemnation commissioners who had viewed the property. He valued the land and improvements taken at $2,742.00.

Another witness for the landowners testified to $40,000 before value and $20,000 after.

The witness upon whose testimony appellant's claim of error is based was Jim Fitzgerald, a real estate broker who had previously been employed for ten years by the Highway Commission as supervisor of real

estate appraisal in the St. Joseph area. He testified that in his opinion the Knapp property had a before taking value of $49,-900.00. In explaining the factors he had considered in his post-taking value, the witness stated:

" * * * First of all, we lost the display area in front of the building. Now the graveled [traveled?] lane is very close, making it difficult to get in and out of the project. Traffic is now very close to the building. The vehicles going up and down the property in inclement weather will be splashing water and snow and everything you can think of far beyond the right-of-way. This sidewalk area in the front is the only way people can get to the building. You get out of the car, you walk across here to get to the door of the entrance of the building for the customers. Remember, we are talking about people that have a couple years on them."

Counsel for appellant interposed an objection that the witness was including "items of damages not appropriate and proper in highway condemnation." After further colloquy, appellant's counsel inquired:

" * * * [I] understand the Court has ruled that the proximity of traffic, increased traffic noise, speculation as to splashing of snow and ice and slush from without the right-of-way outside is to be permitted as an item of damages in this lawsuit?"

The court replied:

" * * * The answer to the question, Mr. Jenkins, is that the Court has previously ruled that the general measure of damages excludes such matters as traffic, ice and snow, etc., except in those cases where there is a unique situation as approaches in this case. We have only one building close to the right-of-way. This approaches a unique situation. It approaches the exception and we will hear some evidence as to particular items of damage which are peculiar to this piece of property and not in general to all pieces on the Belt Highway. However, I would remind you gentlemen that a measure of damages for trespassing, etc., actual trespassing and discharge of snow and gravel is the subject of another lawsuit and should not be considered per se in this lawsuit."

In further testimony, the witness showed that the Knapps' building would, in fact, be closer to the traveled portion of the highway than any other business building situated along the improved highway. He concluded that the after taking fair market value of the Knapp property was $20,900.00. He referred to the special construction features of the building, rendering the use Knapp made of it the highest and best use and the nonconforming use problem which precluded the construction of entrances other than at the front of the building.

In the course of cross-examination, the witness was asked what monetary value he had placed on the possibility that "snow and slush and water and salt, etc., will be exhausted from the new right of way and onto this abutting remainder." The witness replied that he had not placed a dollar value upon that element.

At the conclusion of the cross-examination, counsel for appellant moved to strike Fitzgerald's testimony "because he considered an item that is not compensable and not able to separate it out, so that his damage figure of twenty thousand dollars contains items that are not admissible under the law of Missouri as an item of damages or responsibility of the Missouri State Highway Commission."

The motion was overruled.

On recross-examination, the witness stated that, from his studies, he was satisfied that slush, snow and ice would be a problem for the Knapp property, that the problem would be caused by cars as well as snow plows, that he had observed the effect of highway salt on property and that these difficulties were an indistinguishable factor

that a buyer would look at in trying to figure what it is worth to pay for property.

The landowners called Helen Christie as a witness. She testified that she lived in St. Joseph on Highway 371, a four lane highway with the traveled portion 28 feet from her front door. She stated that in times of "slush and wet" slush and dirt from the highway were thrown by snow plows and traffic upon her porch, against the house and against the windows and doors. Salt in the water turns her aluminum door black.

Prior to the witness's testimony, counsel for appellant had objected to the testimony which he anticipated the witness would give and which she in fact did give on the grounds that "it is not relevant to the issue; that it will insert in this record and for the consideration by this jury an element of damage which is common to all people owning property abutting such highway; that it is not an element of damages in a highway eminent domain case * * *." The objection was overruled as was the motion to strike the witness's testimony on the same grounds.

In this court, appellant complains of the trial court's rulings on its objections and motions covering the testimony about the effect of snow, slush, etc. This point might easily be disposed of summarily because of the absence of any statement therein of "wherein and why" the rulings are claimed to be erroneous. Rule 84.04(d). See *Thummel v. King*, 570 S.W.2d 679, 685–687[5]–[11] (Mo.banc 1978). However, since the final paragraph of the appellant's argument on this point does summarize the bases for its contention of error, the point will be considered.

The argument and summary do include numerous grounds which were not called to the attention of the trial court. When the question of "spatter" testimony first arose, counsel for appellant voiced an objection that the matter was not relevant to any issue of damages, "that if in fact it occurs, it is the same as noise. It is a common

damage that everybody in the range of the highway, with or without taking, has to suffer." The court ultimately concluded it would admit such evidence. When the matter first appeared in Fitzgerald's testimony, the objection was that the witness was "inserting items of damage which are not appropriate and proper in highway condemnation." The motion to strike, although not in the same language, was to the same effect, with no reason stated as to why the items of damage were not appropriate. When objection to Ms. Christie's proposed testimony was voiced, it was predicated on the "common damage" theory.

Nowhere in the transcript is there found objection because the testimony "related to a hypothetical factual situation" (the building was in fact moved before the project was completed); because the evidence would permit consideration of matters involving "future tortious use of the new highway;" that it would subject the commission to "double damages." Review will be confined to the single objection that " * * * insofar as snow, ice, slush and debris will be expelled from the new highway by motor vehicles owned by the private parties, this remainder will suffer neither more nor less than any other abutting landowner, and, under such circumstances, the Commission is not presently required to pay compensatory damages for such damages sustained in common with other abutting landowners; * * *."

Missouri adheres to the position that " * * * noise and speed, increased traffic and their resulting inconveniences are neither elements of damages nor of benefits and they are not proper matters of proof or for the jury's consideration." *State ex rel. Highway Commission v. Galeener*, 402 S.W.2d 336, 340[5–7] (Mo.1966). The basis of this rule is that such damages are "general" in that they are suffered in common by all landowners in the vicinity of the taking, including those owning land which has not been taken. *State ex rel. State Highway Commission v. McMurtrey*, 300

S.W.2d 521, 527[6, 7] (Mo.1957); *State ex rel. State Highway Commission v. Turk*, 366 S.W.2d 420, 421–422[2, 3] (Mo.1963). That is the rule relied upon by appellant here.

A case such as this invokes other general rules, well summarized (omitting citations) in *State ex rel. N. W. Electric Power Cooperative, Inc. v. Waggoner*, 319 S.W.2d 930, 934–935[7]–[9] (Mo.App.1959):

" * * * Where only a part of the property is condemned the owner is entitled to compensation not only for the part actually taken but for whatever consequential damages may proximately result to the remainder by reason of the taking of a part. * * This includes damages resulting from any destruction, restriction, diminution, or interruption of the rights of ownership in and to the property. * * *

"Generally, any evidence which is competent to prove the market value of the tract of land before and after the appropriation of the easement, unless barred by some recognized rule of evidence, is pertinent and admissible. * * * Testimony concerning market value that is purely speculative or based on surmise and conjecture is not admissible. * * * "

*State ex rel. v. Galeener*, supra, recognizes that " * * * even though inconvenience, here of carrying on farming operations or other business, is not an element for which the landowner may be compensated, *it may with other factors affect future use and therefore market value,* * *."* 402 S.W.2d at 340 (emphasis supplied).

In *Kamo Electric Cooperative, Inc. v. Cushard*, 455 S.W.2d 513, 516[3, 4] (Mo.banc 1970), the court rejected the argument that the "rule of common injury" precluded a claim of decreased value of land which considered unsightliness of an electric transmission line as an element. In rejecting the argument the court stated:

" * * * However, land is unique and no one else has a power line which goes across this particular farm in this particular way except the defendants. The farm of the defendants is 'a lot nicer' according to defendants' evidence than some of the adjoining farms. The fact the power line crosses other farms before it reaches and after it leaves defendants' farm does not destroy defendants' right to be paid just compensation for the loss in market value of their farm. * * * Before the taking in question, the defendants had the right to use their farm with complete freedom from diminution in value caused by unsightly structures on it erected by others. As a result of the transmission line being put across the property, the value of their property was reduced, due in part to the unsightliness of the line. This is no mere personal inconvenience or injury, ' * * * common to other landowners in the neighborhood, whose property had not been taken * * *', to quote from the *Chicago Great Western case*, 166 S.W. l. c. 296, relied on by plaintiff."

In *State ex rel. State Highway Commission v. King Brothers Motel, Inc.*, 388 S.W.2d 522, 525[4–6] (Mo.App.1965), the common damage objection was raised to testimony of the owner of a residence that headlights of vehicles on the new roadway constructed in part on the land taken from him shone into the bedroom of his house. The court rejected the objection, stating:

"Furthermore, the evidence was that the outer roadway approached the defendants' house on a downgrade and on a curve, and so far as shown on the plats introduced in evidence it was the only house in this section of the improvement which was so situated, and the only house which would be subjected to the glare of headlights. It cannot be said, therefore, that this was an item of general damage * * *."

Appellant argues that the *King Brothers* case does not support the admission of the evidence here considered because in the *King* case the evidence showed a "unique placement or construction feature of the new highway" which resulted in greater damage to the remainder than to any other landowner whose property had been taken.

The placement or construction of the highway was not the unique feature which produced the result in the *King* case. The location of the landowner's house was such that only he was affected in the particular there involved.

■ In this case, the testimony here in question amply demonstrated that the Knapp building had a special adaptation. See *City of St. Louis v. Paramount Shoe Mfg. Co.*, 237 Mo.App. 200, 168 S.W.2d 149, 153–154[7, 8] (1943). The evidence showed that $10,000 had been expended in the construction of special sound rooms for the hearing aid business. The hearing aid business catered primarily to older persons. Slush and spatter from the roadway would create problems of access to the building for such customers. Because of the nonconforming use problem, alternative means of access were not available. The Knapp building was located closer to the roadway than other business establishments along the improvement. The evidence did show that the slush and spatter problem could well be a factor affecting future use of the property and that such factor could well affect the value of the building.

Under the *Galeener, Kamo* and *King Brothers* cases, the evidence here did not relate to items of general damage common to all landowners in the area.

Inasmuch as the landowner must show that the invasion complained of may be reasonably expected, the testimony of Ms. Christie was properly admitted.

■ Appellant complains of the refusal of its instruction withdrawing from consideration by the jury evidence pertaining to the cost of removing and relocating the Knapps' building. Appellant argues that the instruction was offered because respondents' witnesses disclaimed removal costs as any part of the damages sustained by respondents.

Counsel for appellant introduced and pursued the subject of the removal, subsequent to the date of taking, of the Knapp building to the rear of the lot. The theory of appellant in eliciting such evidence is not entirely clear but some questions on the subject could well have been designed to inject into the case the issue of whether or not the cost of removal of the building might have been less than the damages sought by the landowners. To counter such inference, the landowners presented evidence of the cost of removal. Mr. Knapp testified that he had expended $35,000 on the project and that it was not completed. In other words, since the state injected the cost of cure idea into the case, the landowners presented evidence to show the inapplicability of that theory.

In these circumstances, the appellant having opened up the subject may not complain of the trial court's refusal to give a withdrawal instruction on the matter.

Judgment affirmed.

All concur.