**ST. JOSEPH LIGHT AND POWER COMPANY, Plaintiff-Appellant,**

v.

**Martin M. OHLHAUSEN, et al., (Tract No. 11A) (Harold W. Pepper, et al.), Defendants-Respondents.**

**No. WD 32227.**

Missouri Court of Appeals, Western District.

June 9, 1981.

Modified Sept. 1, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 15, 1981.

Application to Transfer Denied Oct. 13, 1981.

Don Witt of Witt & Boggs, Platte City, Charles S. Wilcox of Wilcox, Houts & Douglass, St. Joseph, for plaintiff-appellant.

John R. Moore and John R. Cady of Moore & Cady, Platte City, for defendants-respondents.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

MANFORD, Presiding Judge.

This is a direct appeal from a jury award in condemnation for an easement. The judgment is affirmed.

Appellant utility presents two points of error, alleging that the trial court erred (a) in refusing to submit a withdrawal instruction and (b) in overruling objections to testimony as to noise emitted by electrical transmission lines as an element of damages.

On July 7, 1977, appellant filed its petition in condemnation to acquire an electrical transmission line easement. The proposed easement included land (tract 11A) owned by Harold and Martha Pepper, respondents. The commission award was $18,270.00. Both appellant and respondents filed exceptions to the damage award on February 6, 1978. Trial was held August 26, 1980. Both parties produced expert testimony as to property valuation. Respondents' two experts placed the damages at $24,000 and $30,000. Appellant's two experts placed the damages at $7,000 and $5,000. Respondent Harold Pepper testified that his property was damaged in the amount of $40,000.

Over objection, one of respondents' experts was permitted to testify about the emission of noise by the transmission line which had been installed by the time of trial. Testimony as to noise was also given (over objection) by Harold Pepper.

At the close of the evidence, appellant tendered instruction no. A, which if it had been submitted, would have withdrawn the evidence of transmission noise from the jury. Respondents' objection to the instruction was sustained. The jury returned an award of $25,000. This appeal followed.

In its first point of error, appellant contends that the trial court erred by refusing to allow the submission of instruction no. A. Said instruction reads as follows:

"INSTRUCTION NO. A

The evidence of the effect on fair market value of noise produced by the power line is withdrawn from the case and you are not to consider such evidence in arriving at your verdict."

The record reveals that noise was not pleaded as a separate element of damages, nor was the evidence relative thereto received as a separate damage claim. The evidence was tendered and admitted in regard to the overall fair market value of respondents' property. Appellant entered a general objection to the evidence.

At trial and on this appeal, appellant contends that it was impermissible to admit any evidence of noise. From that premise, appellant tendered the above instruction and now argues that the refusal to submit it was error. Respondents contend that

refusal to submit the instruction was not error because the instruction, being overbroad, would have withdrawn from the jury all consideration of noise and was not limited to the evidence of noise as that evidence related to the fair market value of respondents' property.

The parties agree that noise was not a separate element of damages. Appellant argues that *all* evidence of noise must be excluded. Respondents contend that the element of noise is a factor which the jury should be able to consider in its total assessment of fair market value.

██ Disposition of appellant's point (1) rests upon the analysis under its point (2) and it suffices, at this juncture, to state that when a withdrawal instruction is too broad, it is not error to refuse its submission. *State, Etc. v. Blue Ridge Baptist Temple*, 591 S.W.2d 248 (Mo.App.1979). The questioned instruction is found to be overbroad when, if submitted, it would have removed consideration of all evidence of noise from the jury. Point (1) is ruled against appellant.

██ In its second alleged error, appellant contends that the trial court erred in overruling its general objections to the testimony of noise emitted by the transmission line.

Appellant takes the broad and sweeping position that any and all evidence of noise is inadmissible in a power line condemnation proceeding. This precise question has never been ruled on in our state. Appellant supports its argument by analogy to the issue of noise in highway condemnation cases. Appellant relies upon *State ex rel. State Highway Commission v. Turk*, 366 S.W.2d 420 (Mo.1963). In *Turk*, the landowner, over objection, testified to his personal annoyance caused by traffic noise produced by a new highway close to his property. The landowner, in closing argument, added: " 'Would you give that much for a farm that has got the road right behind its back door, with the noise and everything from

the diesels?' " *Turk* at 421. On appeal, our state Supreme Court held that speed and noise from traffic were not proper elements of damages in condemnation for highway and railroad use.[1] In arriving at this conclusion, the court further held that the landowner's damages were not rendered separate by the fact that there was a grade near his house which drew the traffic noise toward the house. At 422, the court declared, "In that connection, we think judicial notice may be taken of the fact that the noise of traffic, particularly from trucks going up an incline, may be heard for a considerable distance in every direction. While, no doubt, there is some difference in degree, we think the annoyance from the noise at the point in question is shared by all who reside in the neighborhood." Seizing upon the above language and the admission by respondents that noise was not a damage separately claimed, appellant argues that *noise* herein falls into the "common injury rule" and thus all evidence relative thereto was prejudicial. It was the "common injury rule" which the court in *Turk* relied upon to deny the defending landowner his claim for damages caused by noise.

If the rule announced in *Turk* were the only guideline provided to this court, appellant's position would be virtually assured. However, the rule in *Turk* appears to have been modified. In *State ex rel. State Highway Commission v. Galeener*, 402 S.W.2d 336 (Mo.1966), our state Supreme Court, in citing *Turk* for the general rule that noise, speed, increased traffic and the resulting inconvenience are not elements of damages or benefits and are not therefore proper matters for jury consideration, added that although inconvenience unto itself was not compensable, "it may with other factors affect future use and therefore market value ...", *Galeener* at 340. The court in *Galeener* went on to note that when "a part only of a tract is taken the owner is entitled to recover for the land actually taken and in addition 'whatever consequential dam-

---

1. For a collection of cases discussing traffic noise as an element of damage in condemna-

tion cases, see 51 A.L.R.3d 860 et seq. (1973).

ages may proximately result to the remainder by reason of the taking of the part ...' ", quoting *State ex rel. N. W. Electric Power Co-Op., Inc. v. Waggoner*, 319 S.W.2d 930, 934 (Mo.App.1959). The court, in *Galeener*, concluded that the evidence of traffic hazard and speed was introduced relative to the disruption, destruction, and diminution of ownership rights, and therefore no prejudice occurred in the overruling of an objection which did not seek to limit the purpose of the evidence, but to prevent it.

Following *Galeener*, another decision appears to have also modified *Turk*. In *Kamo Electric Cooperative, Inc. v. Cushard*, 455 S.W.2d 513 (Mo.banc 1970), the electric utility, as condemnor, gained an easement 100 feet wide and 2,805 feet long across the owner's 220 acre farm-residence. On appeal, our state Supreme Court considered the question of whether or not there was error in permitting the jury to consider unsightliness of the property as a result of the installation and maintenance of the power line. While the court did not refer to *Galeener*, it stated, "We declare the rule to be that 'unsightliness' resulting from a transmission line is in this state a proper element of damage for consideration by a jury when it is shown by competent and substantial evidence that such factor *has diminished the value of the property involved.*" (emphasis added) *Kamo* at 516. *Kamo* appears to apply the rule of *Galeener* that while *inconvenience (Galeener)* and *unsightliness (Kamo)* are not compensable as separate elements of damage, such may be considered as factors, diminishing the market value of property. In *Kamo*, the court distinguished *Turk* on a factual as opposed to a legal basis. In *Kamo*, appellant argued that "unsightliness" was a common injury and thus noncompensable under *Turk*. In response to that argument, the court declared:

"... land is unique and no one else has a power line which goes across this particular farm in this particular way except the defendants. The farm of the defendants is a 'lot nicer' according to defendants' evidence than some of the adjoining

farms. The fact the power line crosses other farms before it reaches and after it leaves defendants' farm does not destroy defendants' right to be paid just compensation for the loss in market value of their farm ... As a result of the transmission line being put across the property, the value of their property was reduced, due in part to the unsightliness of the line. This is no mere personal inconvenience of injury, '... common to other landowners in the neighborhood, whose property had not been taken ...' " *Kamo* at 516.

The facts of the instant case are quite similar to those in *Kamo*. Here, as in *Kamo*, respondents owned a 200 acre farm imposed upon by a power line easement containing numerous poles and equipment. In *Kamo*, the particular farm was a "lot nicer" than some adjoining properties and the power line was especially unsightly as it ran along a ridge. In the instant case, respondents' farm was "above average" as compared to other farms in the area and was particularly suited to rural residential development. Respondents' land included a mile of road frontage served by water and telephone lines. The easement was particularly detrimental because it proceeded directly through this frontage area.

There exists two distinct parallels between the instant proceedings and *Kamo*. First, in neither case did the landowners attempt to approach the particular element (i. e., *unsightliness* in *Kamo* and *noise* in the instant case) as a separate element of damage. Second, the evidence in both cases was offered and received as something which related to the appraised value of their properties. In the instant case, respondents offered no evidence that the noise was personally disturbing to them. Respondent Harold Pepper testified that the "roar" of the power line was a problem when he was farming near it. However, this referenced testimony was related to other testimony, the main thrust being that the value of the property had been lessened by the installation of the power line. Other evidence on respondents' behalf established

that the noise emitted by the power line would inhibit rural residential development upon respondents' property, resulting in a reduced market value.

In conclusion, the trial court did not err in permitting evidence of noise emitted by appellant's power line. This court bases such conclusion upon three reasons: (1) there is nothing unique about noise emitted by a power transmission line which would distinguish it from "unsightliness" or other elements; (2) the evidence of noise was introduced solely as a factor to be considered in determining the decline in market value of the remaining property of respondents and hence comes within the rule announced in *Galeener*; and (3) the evidence was substantial to show that such noise diminished the value of respondents' property, thus bringing the instant case within *Kamo, supra*. Appellant's point (2) is found to be without merit and is ruled against it.

For the reasons set forth herein, the judgment is in all respects affirmed.

All concur.